CRANE *v.* MICHIGAN CENTRAL RAILROAD CO.

1. RAILROAD COMPANIES—ACCIDENT AT CROSSING—CONTRIBUTORY NEGLIGENCE.

Plaintiff's intestate, a boy 12 years of age, was killed at a railroad crossing, while attempting to drive across the track. The testimony tended to show that by reason of obstructions between the highway and the railroad, which ran parallel for a considerable distance, an approaching train could not be seen from the highway, for a distance of several hundred feet from the crossing, until the horse was within two feet of the track; that the statutory signals were not given upon the approach of the train; that, although the deceased was notified when at some distance from the crossing that a train was coming, and remarked that he would have to hurry if he made the crossing, he was afterwards seen driving slowly along, in the apparent exercise of due care, and that a train passed shortly after such conversation, before the deceased reached the crossing. There was no testimony as to decedent's conduct immediately before entering upon the track. *Held,* that the question of his contributory negligence was for the jury.

2. SAME—EVIDENCE—FAILURE TO GIVE STATUTORY SIGNALS.

Testimony of persons who were near a railroad crossing at the time of an accident, and whose attention had been directed to an approaching train, that they did not hear the train whistle for the crossing, is sufficient to justify a finding that the whistle was not sounded, although other witnesses testify positively that the signal was given.

3. SAME—CONCLUSION OF WITNESS.
  It is not error in such case to permit a witness to be asked
    whether he could have heard the signal if it had been given,
    the question being merely equivalent to an inquiry as to
    whether he was within hearing distance. HOOKER and GRANT,
    JJ., dissenting.

Error to Kalamazoo; Buck, J. Submitted November 6, 1895. Decided December 24, 1895.

Case by Edgar A. Crane, administrator of the estate of Daniel A. Crane, deceased, against the Michigan Central Railroad Company, for negligently causing the death of plaintiff's intestate. From a judgment for plaintiff, defendant brings error. Affirmed.

*Edwards & Stewart (Ashley Pond* and *Henry Russel,* of counsel), for appellant.

*William G. Howard* and *Alfred J. Mills,* for appellee.

McGRATH, C. J. Plaintiff's intestate, who was 12 years of age, and another lad, who was 16 years of age, were killed while on the highway in a top buggy at a railroad crossing. Both highway and railroad way ran in the same general direction for some distance east and west from Comstock station. The crossing is about one mile west from the station. Both railroad and highway ran parallel, in a northwesterly direction, from the station to the crossing in question. The railroad way then curves to the south, crossing the highway, and running on the south side thereof. The boys were driving west, and the engine evidently picked up the buggy from the rear thereof. Both highway and railway are in cuts from the crossing easterly for some 600 feet. Plaintiff's testimony tended to show that the embankment of earth between the highway and the tracks was between 4 and 5 feet above the bed of the highway for some distance east of the crossing; that on the crest of this embankment the

railroad company had erected a board fence, which was between 4 and 4½ feet in height; that, since the construction of the railway, earth has been thrown up from the railroad way on top of this embankment; that shrubbery had grown along the line of the fence; that the fence was on the line between the company's right of way and the highway; that a train approaching from the east could not be seen from a buggy on the highway, even by standing upon the buggy seat, until the front feet of the horse were within two feet of the track; that in going westerly, for some distance east of the crossing, both highway and railroad way were on the same down grade; that a train bound east had, within a very few minutes before the collision, and while the boys were within 100 rods of the crossing, made the crossing, and was side-tracking west of Comstock station; that the passenger train which struck the vehicle did not stop at the station, but was from 20 to 25 minutes late, had slowed up before reaching the station, to get the signals, but had recovered its speed, was endeavoring to make time, and was running at the rate of 60 miles per hour, to get out of the way of the North Shore Limited, the fastest train on the road, and that the Limited came up within a few minutes after the collision; that the horse was thrown high in the air, and the train ran 100 rods after the buggy was struck; that the train whistled for the station, but did not whistle for the crossing.

The testimony was conflicting relative to the giving of the crossing signal, and the difficulty in observing the approaching train, and the claim is made that the testimony was sufficient to overcome the presumptions which ordinarily obtain in such case, as to the observance of ordinary care on the part of the boys. It is insisted that the statements of witnesses that they did not hear the whistle ought not to be considered, where there is positive proof that the whistle was actually given. There was a

107 MICH.—33

strong wind from the northwest. Witnesses who were just east of the station testified that they heard the station whistle, but that they heard no crossing whistle. Witnesses who were west of the crossing, north of the railroad right of way, and in a position to look up and down the railroad right of way towards the approaching train, and who were watching it, and saw the boys approach the crossing, say that they heard no whistle, and did not see the escape of steam which usually attends the giving of the signal. These witnesses had their attention attracted to the train, not only by the fact of the collision, but before the collision. The testimony was competent, and its weight for the jury. The court very properly instructed the jury upon this point as follows:

" 'The mere fact that parties testify that they did not hear the whistle or bell—one or both—is not conclusive proof that the whistle was not sounded or the bell rung. The testimony of any person positive as to what he saw or heard is ordinarily of greater value than testimony of any number of persons who did not see or hear, although such persons might have seen or heard, had their attention been attracted to the spot or thing. One whose duty it is to look out and observe may be much more likely to see and hear and know what was being done and taking place than any number of persons who are neither paying attention nor required to see or hear.' That instruction, gentlemen, is correct, but it is also true that the whole matter is for your consideration and your determination. While it is ordinarily true, as stated in this instruction, that the testimony of one who says that a certain thing was done, and that he observed it, is of greater value than of other people who say it was not done, and who may have had equal means of observation, yet that is subject to this limitation: that the jury are to take all the facts and circumstances into consideration. They are to take into consideration the credibility of the witnesses. They are to take into consideration their means of observation, their likelihood of remembering. And so no other rule can be given a jury, upon a matter of this kind, than that the whole testimony is for them, and they are to decide according to the fact."

·A witness who had testified that he was watching the approach of the train from a point west of the crossing, and that he heard no whistle, was asked if he would have heard it if it had whistled. This question was objected to as calling for a conclusion. The objection was overruled, but the question was not answered. The witness was then asked if he could have heard it from where he then was, if it had whistled. This question was not objected to, and was answered. The question answered was a different one from that objected to, and was equivalent to an inquiry as to whether or not he was within hearing distance.

Counsel endeavor to demonstrate mathematically the ability of a person approaching such a crossing to see over the embankment, or over or through a fence of the character named; but there was evidence of other obstructions, and, at any point within two or three hundred feet of the rails, a party looking in the direction of the approaching train would be below the top of the fence, and would be looking easterly along the line of the fence and embankment, and not northerly, or at right angles with the fence.

A witness says that he met the boys some distance west of Comstock station, and about 2,100 feet east of the crossing; that one of the boys asked witness if there was a train coming, and he said to them, "Yes; it is right up on top of the hill;" that one of the boys then said, "We will have to hustle, if we make the crossing;" that they started the horse upon a trot; that at this time one of the boys was down on his knees in the bottom of the buggy, with his face to the east,"playing or fooling in some way." The witness says he referred to the west-bound train, but it does not appear that he communicated that fact to the boys. However that may be, the train from the west came immediately after this interview; and two witnesses say that they saw the boys after that interview, that their horse was on a walk, and that the boys were on the buggy

seat, conducting themselves properly. There is no other testimony tending to show that the boys were negligent, except the circumstances under which they drove upon the track. The court very properly left the question of negligence to the jury. No error is assigned upon the instructions given, the point relied upon being the refusal to direct a verdict for defendant.

We find no error, and the judgment is affirmed.

LONG and MONTGOMERY, JJ., concurred with McGRATH, C. J.

HOOKER, J. (*dissenting*). I think the judgment should be reversed, for the reason that the question to the witness Anderson, "Could you have heard the whistle from where you stood, had it been blown?" called for a conclusion in relation to a question which should have been left to the jury, upon the circumstances shown.

GRANT, J. I concur with my Brother HOOKER, but express no opinion on the other points.