### PEOPLE *v.* HALLAS.

1. CRIMINAL LAW—QUASHING INFORMATION—SUFFICIENCY OF EVIDENCE.

   In prosecution for robbery armed, where evidence was sufficient to constitute fact of defendant's participation in robbery question for jury, motion to quash information for lack of evidence to hold him for trial was properly overruled.

2. SAME—TRIAL—EVIDENCE—IMPEACHING OWN WITNESS.

   In prosecution for robbery armed, where witness for prosecution identified one of defendants as one of robbers, it was error for prosecutor to question witness about her contradictory testimony at examination and reason therefor, since this was no part of issue unless and until brought out on cross-examination; claim that its purpose was to refresh witness' recollection being without merit.

3. SAME—UNWILLING WITNESS—REFRESHING RECOLLECTION BY TESTIMONY AT EXAMINATION.

   Where one of persons robbed was unwilling witness at trial, and testified that he was not sure that defendants were the robbers, it was proper to allow his recollection to be quickened by reference to his testimony at examination, to point of identifying one of defendants as one of robbers, and this produced substantive evidence.

4. SAME—EXAMINATION OF WITNESS LIMITED TO ONE COUNSEL.

   Examination of witness may be limited to one counsel at time, but objections may be made by several counsel.

5. SAME—EVIDENCE—HEARSAY—CURING ERROR.

   It was reversible error for prosecutor, over repeated objections, to get before jury prejudicial, irrelevant, and hearsay testimony giving impression that defendants were part of dangerous gang; and striking out answers did not operate to erase impression.

6. SAME.

   It was error for prosecutor to introduce testimony by woman victim of robbery that another certain woman said to her she would not know what to do if defendant was going to get jail, where prosecutor failed to connect it up, as he promised to do.

On right for purpose of cross-examination to inspect paper used by witness to refresh memory, see annotation in 22 L. R. A. (N. S.) 706.

7. SAME—TRIAL—ARGUMENT OF PROSECUTOR.

Prosecutor's argument to jury treating death of witness as accomplished fact, although jury was well aware that she was not dead, was prejudicial error, where only excuse for said statement was incompetent admission of anonymous letter threatening witness with death unless she testified that defendants had not robbed her.

8. SAME—EVIDENCE—HEARSAY—IMPEACHING OWN WITNESS.

In criminal case, prosecutor may not, by introducing evidence challenging credibility of witnesses for prosecution, bring immaterial and hearsay testimony to attention of jury.

Appeal from Recorder's Court of Detroit; Brennan (John V.), J. Submitted October 15, 1931. (Docket No. 206, Calendar No. 35,295.) Decided March 2, 1932.

Frank Hallas and Joseph Janicke were convicted of robbery armed. Reversed, and new trial granted.

*Herbert A. Denis* and *McClear & Caniff,* for appellants.

*Paul W. Voorhies,* Attorney General, *W. Gomer Krise,* Acting Prosecuting Attorney, and *Edmund E. Shepherd,* Assistant Prosecuting Attorney, for the people.

WIEST, J. Defendants were convicted of the crime of robbery armed and sentenced to prison for life.

Three armed bandits, with faces partly covered, held up an automobile and robbed its occupants. At the preliminary examination, defendant Janicke was identified as one of the robbers, and defendant Hallas sufficiently identified to constitute the fact of his participation in the robbery a question for

the jury. The motion in behalf of Hallas to quash the information for lack of evidence to hold him for trial was properly overruled.

At the preliminary examination, Cecelia Stachura, one victim of the robbery, first testified that defendants were not the robbers, "it was some other guys," but later said that she so testified by reason of fear caused by an anonymous threatening letter. She then identified defendant Janicke as one of the robbers. At the trial, she testified that Janicke was one of the robbers, and the prosecutor, over objection, was permitted to question her about her contradictory testimony at the examination and the reason therefor. This, it is contended, was error. It was no part of the issue unless and until brought out on cross-examination. The claim that its purpose was to refresh the recollection of the witness was specious, for at the trial she positively identified Janicke.

Frank Hajman, the other person robbed, was an unwilling witness at the trial, and testified that he was not sure that defendants were the robbers. His recollection was quickened by reference to his testimony at the examination, to the point of identifying Hallas as one of the robbers. The examination was proper, and produced substantive evidence.

Defendants had two counsel; one objected to a question put by the prosecutor, and the other, very soon, also made an objection. The prosecutor then objected, stating:

"This case ought to be confined to one attorney."

Mr. Sherman, one attorney for defendants, stated:

"No; the rule isn't that way. There is no limitation."

The court ruled:

"The court will set one."

Examination of a witness may be limited to one counsel at a time, but objections may be made by several counsel. The court, in denying the motion for a new trial, recognized the rule, and stated that the ruling at the trial was to avoid having two counsel on their feet at the same time. The trial was not restricted to one counsel.

The prosecutor, over repeated objections, succeeded in getting before the jury prejudicial, irrelevant, and hearsay testimony. In questioning Hajman he asked:

"*Q.* Well, do you know whether or not Mr. Hallas' mother makes dresses for your mother or sister?

"*A.* Well, my mother told me before we used to live on Kirby and Dubois, a couple of years ago—

"*Q.* What is that?

"*A.* We used to live on Kirby and Dubois about two years ago.

"*Q.* Well, you answer my question.

"*A.* What?

"*Q.* Do you know whether your mother makes dresses—

"*A.* She said she did.

"*Q.* Has your mother talked with you about this case? She has, hasn't she?

"*A.* Yes, sir.

"*Q.* And your mother told you not to tell on Hallas, didn't she?

"*A.* She did not say that.

"*Mr. Willard:* Just a moment. Your honor, how is that binding upon this defendant? This witness is not shown to be hostile. This is cross-examina-

tion, and an attempted impeachment, if the court please, of his own witness.

"*Mr. Kent:* It was a refreshment of his own recollection.

"*Mr. Willard:* It seems to me he is doing a lot of refreshing.

"*The Court:* Go ahead.

"*Q.* Mr. Hajman, when the officers came after you to take you to identify Mr. Hallas   *   *   * didn't your mother tell you, in Polish, not to tell on Frank Hallas?

"*A.* She didn't say to me nothing. She just told me to watch my step.   *   *   *

"*Q.* How did she come to tell you that?.

"*A.* Because one woman was talking to her—

"*Mr. Willard:* Just a moment. This is bringing hearsay into this case. You are covering a large territory here, and there should be a limit.   *   *   * If the court please, I have made my objection. Did you sustain me?

"*The Court:* I only got a portion of it. If you know, now, you may answer. Tell us about it.

"*A.* There was a woman told my mother there was a dangerous gang—

"*Mr Willard:* Just a moment, Mr. Hajman. If your honor please, that is dangerous. It is purely hearsay.

"*Mr. Kent:* I didn't ask for that. That was not my question at all. What I am asking is: How did your mother come to tell you, in Polish, as you say, to watch your step?

"*Mr. Willard:* Now, may it please the court, how in the wide world can he know how his mother came to say anything to him, unless he has different mental faculties from what I have?

"*Mr. Kent:* He talked to his mother about it.

"*The Court:* You may take the answer.

"*Mr. Willard:* May I make one more objection, your honor. Just a moment, Mr. Hajman. Ob-

viously, this is pure hearsay, and not binding upon these defendants. He is not a hostile witness. It has not been shown that he is a hostile witness. It is not a proper form of impeachment.

"*The Court:* Take the answer. * * *

"*Q.* Tell us how it is that your mother came to tell you to watch your step?

"*A.* That night, before the dicks came over to take me down, I was eating supper, and at that time she got scared and she said, 'What is the matter?' I told her I was held up, and I was supposed to identify the guys. She said the grocery woman told her it was a dangerous gang—

"*Mr. Willard:* May it please the court, I object to that; it is purely hearsay.

"*The Court:* I will sustain the objection.

"*Mr. Willard:* I will ask that the jury be instructed to disregard what was said.

"*The Court:* Disregard that, ladies and gentlemen.

"*Q.* Listen. Go ahead and tell us now what you told me—

"*Mr. Willard:* May it please the court, this is hearsay that is being offered here.

"*The Court:* Take the answer.

"*A.* She heard it was a dangerous gang.

"*Mr. Willard:* I ask that what she heard be stricken.

"*The Court:* That may be stricken.

"*A.* So she told me to watch my step and not to say nothing, whether I know the buys or not. And I went there, and they showed me the guys, and I just said what I said about the guys, about the voice and the quiet like."

No man on trial can meet such kind of testimony, nor, under our system, is he required to do so. It was highly prejudicial, without excuse, and commands reversal. It gave the jury as impression

that defendants were part of a dangerous gang, and striking out the answers could not operate to erase the impression.

There was also error in the prosecutor introducing a conversation had between Cecelia Stachura and another woman by the name of Krueger, in which Miss Stachura said that Miss Krueger said "she would not know what to do if Frank Hallas was going to get jail." The prosecutor promised to connect that up. We fail to find the connection.

The prosecutor committed prejudicial error in the following portions of his argument to the jury:

"I believe that you are courageous, and I believe, ladies and gentlemen of this jury, that if the rule of gangdom—

"*Mr. Sherman:* If your honor please, I am going to make an objection to that remark.

"*Mr. Kent:* And the intimidation of the picked bandits of Detroit—

"*Mr. Sherman:* Just a minute, Mr. Kent. I take an exception to that as being highly prejudicial.

"*The Court:* Hold to the testimony, Mr. Kent.

"*Mr. Kent:* Yes, your honor. I want to say this, that before the year 1930 passes into history, and the flowers fade and die on the grave of Cecelia Stachura, that you, by your courageous verdict, will have written an epitaph into the million and half hearts of this community that Cecelia did not die in vain.

"*Mr. Sherman:* Now, your honor, I take an exception to that as highly prejudicial, and ask your honor to strike it out.

"*The Court:* Strike that last sentence from the record."

Of course, the jury was well aware of the fact that Cecelia Stachura was not dead, and the only

excuse for the oratory was the incompetent admission of an anonymous letter to Miss Stachura, in which it was said:

"Go, and tell the true, that you never did see Hallas and Janicke. tell them, that you lied—that they never did robbed you. if you do not, the flowers of 1930 will bloom—upon your grave;—"

The prosecutor seemed to entertain the idea that if he introduced evidence challenging the credibility of witnesses for the prosecution, he could bring immaterial and hearsay testimony to the attention of the jury. The instruction to the jury was as follows:

"Ladies and gentlemen, there has been some testimony here with reference to an exhibit, a letter, introduced in evidence. As the court has already instructed you, that letter is admitted in evidence for your consideration solely as it bears on the credibility of the witness Cecelia Stachura. In other words, you are entitled to that, but it is limited to how it affects her credibility, and to nothing else. In other words, that letter is not binding upon the defendants or either of them, but you are entitled to it, so that you may have it in determining the credibility of the witness as you have heard her former testimony as brought in here by the record, and the testimony she gave on the witness stand, and her reasons, as she gave them to you, for her changing her testimony. That is the purpose of it, and it is limited to that field and to that alone.

"Then, there is other testimony here on the part of the witness Frank Hajman, about what his mother said to him that not being in the presence of either of the defendants.

"Now, that is not binding upon the defendants, and you are entitled to that only as it affects his credibility, in other words, as it affects his truth-

fulness as he testifies here. You are entitled to that, but as the court has already instructed you, it is limited to that field."

The testimony should have been excluded and no such issues left to the jury. The witnesses had identified defendants, told all about the robbery, and, under an inadmissible theory, the prosecutor got before the jury the unsupported and prejudicial impression that defendants were members of a gang of bandits, and, unless convicted, the witnesses against them would be in danger.

The convictions and judgments are reversed, a new trial granted, and defendants remanded to await trial.

CLARK, C. J., and McDONALD, POTTER, SHARPE, NORTH, FEAD, and BUTZEL, JJ., concurred.