## HIGDON *v.* KELLEY.

1. INTOXICATING LIQUORS—SALES TO INTOXICATED PERSONS—INJURY TO PLAINTIFF.

> Evidence in actions against tavernkeeper and surety on liquor bond by widow and 5 children of man who died as result of blows inflicted at defendant tavernkeeper's place of business by another patron, *held,* sufficient to show that such patron became intoxicated, that he was served beer while in that condition and that his wrongful conduct caused the death of plaintiff's decedent (CL 1948, § 436.22).

2. SAME—EVIDENCE OF INTOXICATION.

> It is unnecessary to have expert testimony to show that 10 to 12 glasses of beer in an afternoon are sufficient to cause intoxication.

3. SAME—GREAT WEIGHT OF EVIDENCE.

> Verdicts for plaintiffs *held,* not against the great weight of the evidence in actions by widow and 5 children of a patron at defendant tavernkeeper's bar, who was fatally injured by another patron who had become intoxicated at defendant's place of business (CL 1948, § 436.22).

4. WITNESSES—REFRESHING RECOLLECTION—IMPEACHMENT.

> A witness may be interrogated on direct examination by the party calling him as to inconsistent statements previously made by him for the purpose of refreshing his recollection and inducing him to correct his testimony, where he has taken the party calling him by surprise, and the party surprised may also show the facts to be otherwise than as stated, al-

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 30 Am Jur, Intoxicating Liquors § 643.
[4–6] 58 Am Jur, Witnesses §§ 578, 799.
[7, 9] 1 Am Jur, Actions § 77.
[8, 10, 12] 1 Am Jur, Actions §§ 92, 93.
[11, 13] 30 Am Jur, Intoxicating Liquors § 635.
[14] 14 Am Jur, Costs §§ 8, 71.

though this incidentally tends to discredit the witness, but evidence offered for the mere purpose of impeaching one's own witness would be inadmissible.

5. SAME—REFRESHING RECOLLECTION—DISCRETION OF COURT.
It is within the discretion of a trial judge to permit leading questions to be asked of a witness, who appears to be hostile to the party calling him, in order to refresh his recollection as to previous statements such witness had made.

6. SAME—IMPEACHMENT.
A party may not impeach his own witness by showing prior contradictory statements, where the witness had denied making any such prior contradictory statements.

7. ACTION—JOINDER OF ACTIONS—CONVENIENT ADMINISTRATION OF JUSTICE.
Causes of action may be joined by plaintiffs, where that result would promote the convenient administration of justice, the same legal and factual issues are involved, the same testimony applies, and the consolidation will not prejudice either party (CL 1948, § 608.1).

8. SAME—JOINDER OF ACTIONS—CONSOLIDATION OF CASES.
The right of the plaintiffs to join causes of action to promote where the convenient administration of justice gives the court discretionary authority to consolidate cases, where the plaintiffs could have exercised that right (CL 1948, § 608.1).

9. SAME—JOINDER OF ACTIONS—STATUTES.
The statute as to joinder of actions and parties is broad in its provisions and goes far beyond the practice previously observed (CL 1948, § 608.1).

10. SAME—CONSOLIDATION OF CASES—CONSTRUCTION OF STATUTE.
The statutory power of the court to order consolidation of cases is not to be strictly construed, since it is an admittedly liberal statute and so to construe it would defeat the basic purpose of the statute (CL 1948, § 608.1).

11. INTOXICATING LIQUORS—JOINDER OF ACTIONS—TAVERNKEEPER—SURETY.
The joinder of one action by a child of defendant tavernkeeper's patron against such defendant and the surety on his liquor bond with other actions by the widow and other children against the tavernkeeper alone was not prejudicial, since the liability of such licensee and the surety is joint and several

and each plaintiff could have joined both defendants (CL 1948, §§ 436.22, 608.1).

12. ACTION—CONSOLIDATION OF CASES.

The propriety of consolidation of cases is to be determined entirely by the state of facts existing prior to the consolidation.

13. INTOXICATING LIQUORS—JOINDER OF ACTIONS—PREJUDICE—VERDICTS.

Verdicts of jury in consolidated actions by widow and 5 children of deceased patron of defendant tavernkeeper, in which his liquor bond surety was joined as a defendant in action by only 1 of the children *held,* not to have resulted prejudicially to defendant tavernkeeper, where verdict in the 1 case in which the surety remained a defendant was the same as in the cases of the other minor children and was not predicated upon the maximum liability of the surety's bond (CL 1948, §§ 436.22, 608.1).

14. COSTS—CONSOLIDATED CASES—DIVISION BETWEEN PLAINTIFFS.

Full costs are ordered assessed in but 1 of the 6 cases consolidated, the amount to be equally divided among the plaintiffs and added to their respective judgments against tavernkeeper and surety on his liquor bond (CL 1948, §§ 436.22, 608.1).

Appeal from Oakland; Holland (H. Russel), J. Submitted January 6, 1954. (Docket No. 13, Calendar No. 45,975.) Decided April 5, 1954.

Case by Dolores R. Higdon against John J. Kelley and United States Fidelity & Guaranty Company, surety, under civil damage provision in liquor laws, for damages upon death of husband. Similar actions, in behalf of 5 minor children, were consolidated for trial, over objections of defendants. Verdicts and judgments for plaintiffs. Defendants appeal. Affirmed.

*Joseph Marvaso,* for plaintiffs.

*Moll, Desenberg, Purdy & Glover,* for defendants.

BUTZEL, C. J.  Dolores R. Higdon, plaintiff, is the widow of the late Willard J. Higdon.  The plaintiffs in the other 5 cases are his minor children, who, by their guardian, brought separate suits against the defendants.  The original defendants were John J. Kelley and Mildred E. Kelley, husband and wife, and the United States Fidelity & Guaranty Company, surety on a liquor bond of the above-named John J. Kelley.  The 6 cases were consolidated for trial over the objection of defendants John J. Kelley and Mildred E. Kelley.  Upon motion of plaintiffs' counsel, the surety company was dismissed as a defendant in 5 cases and remained as a codefendant in the one action brought by the guardian of Rodney Raymond Higdon.  In that case the *ad damnum* clause was reduced to $5,000, the limit of the surety's liability. During the trial Mildred E. Kelley was dismissed as a defendant in all 6 cases.  We shall refer to John J. Kelley as defendant in each case and the surety company as codefendant in the one case.

Defendant was the proprietor of a tavern known as Kelley's Oxbow Lake Bar in White Lake township, Oakland county, Michigan.  Late Sunday afternoon, July 17, 1949, Willard J. Higdon, plaintiffs' decedent, became engaged in a fight in defendant's bar with one Raymond Robinson, another patron of the bar.  Higdon died 2 days later of a subdura hematoma and skull fracture, allegedly the result of a fall caused by the blows inflicted by Robinson.

Plaintiffs' case is based upon PA 1933 (Ex Sess), No 8, § 22, as amended by PA 1937, No 281 (CL 1948, § 436.22 [Stat Ann 1953 Cum Supp § 18.993]), which provides in part:

"Every wife, husband, child, parent, guardian or other persons who shall be injured in person or property, means of support or otherwise, by an intoxicated person by reason of the unlawful selling, giving or furnishing to any such persons any intox-

·icating liquor, shall have a right of action in his or her name against the person who shall by such selling or giving of any such liquor have caused or contributed to the intoxication of said person or ·persons or who shall have caused or contributed to any such injury, and the principal and sureties to any bond given under this law shall be liable, severally and jointly, with the person or persons selling, giving or furnishing any spirituous, intoxicating or malt liquors as aforesaid, and in any action provided for in this section, the plaintiff shall have ·the right to recover actual and exemplary damages in such sum not less than 50 dollars in each case as the court or jury may determine."

It appears that at or about 2 p.m. on Sunday, July 17, 1949, Robinson stopped at defendant's tavern after previously visiting another where, he said, he had had 4 glasses of beer. He was a powerful man, ·was engaged in the trucking business, and had had some experience as a prize fighter. He testified that he had had 4 or 5 shells of beer at defendant's tavern. His attention was then called to an unsworn statement made the day following the attack in which he stated that he had had 10 or 12 drinks at defendant's tavern. At the time of the trial he did not deny making this former statement but testified that he thought at that time that it referred to the number of drinks he had had all afternoon and that such included those he had before coming to defendant's bar. Just what occurred that precipitated the quarrel between Higdon and Robinson is not clearly shown.

No statement could be obtained from Higdon as he never regained consciousness. Higdon left home at 5:30 p.m. on July 17, 1949, and went to the tavern with a friend. They ordered 2 bottles of beer. Higdon sat at the bar not far from where Robinson was

seated. After Higdon's friend left the bar to use the telephone, the trouble arose.

According to a witness, Robinson was "mumbling of some sort." His language was abusive and foul. Higdon "never said a word to Robinson until he saw that Robinson was addressing him." Higdon said, "What the hell are you mad at, don't get mad at me." Robinson evidently touched his arm or hit him and knocked over the glass of beer. Higdon grabbed a bottle of beer and with it struck Robinson in the face. Robinson pushed Higdon and he fell on the floor. The bartender then separated the two. Higdon was led quietly outside. When Higdon was outside the doorway, he stood there looking inside; the bartender was standing in the doorway between Higdon and Robinson. Thereupon Robinson swung his right arm around the bartender's shoulder and struck Higdon on the jaw. Higdon fell backward and his head struck the walk. He was unconscious from that moment on. He was placed in a friend's automobile, possibly with the thought that fresh air would revive him. A few hours later he was taken to the hospital where he died some 33 hours after being struck.

The case was tried before a jury, under a fair charge about which no complaint is made. The jury returned a verdict in favor of Dolores R. Higdon, the widow, in the sum of $5,000 and verdicts for $2,000 each in the cases of the minor children. In the case of Rodney Raymond Higdon the $2,000 verdict was against both the defendant and the co-defendant.

Three main questions are raised on appeal. (1) It is claimed that the verdicts of the jury are against the great weight of the evidence. We believe that there was sufficient evidence to show that Robinson became intoxicated, that he was served with beer while in that condition, and that his wrongful con-

duct caused the death of plaintiff's decedent. We do not believe that expert testimony is necessary to show that 10 to 12 glasses of beer in an afternoon are sufficient to cause intoxication. Testimony further shows that Robinson was mumbling and was using vile and abusive language prior to the attack. Higdon had left his wife and family about 5:30 p.m. and was sober. It is not claimed that he was intoxicated. It was only after he received the first and only bottle of beer that the trouble began. It became a jury question whether the trouble arose through Robinson's intoxication or whether being struck with the beer bottle caused a reaction on his part. Just what preceded the quarrel is not shown except by meager testimony. There was testimony that Robinson, whose face was badly cut up by the bottle, went to the hospital where he was given aid. The doctor at the hospital stated that he showed signs of intoxication when he was brought there. Defendants claim that this was largely due to the cuts that he had received and the odor of beer from the contents of the bottle that naturally spilled on to his clothes. Robinson claims that after Higdon struck him with the beer bottle so that it broke, Higdon pressed the jagged ends of the bottle against his face. However, no other witness corroborated this statement of Robinson. His face was badly cut up when he arrived at the hospital. While there may be a close question of fact in the case, nevertheless we cannot say that the verdicts were against the great weight of the testimony.

(2) The trial began on November 5, 1952, over 3 years after the occurrence at the tavern. Plaintiffs' principal witnesses were Robinson and one Cubley who had been sitting at the bar at the time of the attack. Both Robinson and Cubley had made statements at the prosecutor's office the day following the fight at the bar.

The following occurred during the examination of witness Cubley:

"*Q.* Do you remember, you remember what you said before the prosecutor's office?
"*A.* Well, I think I could.
"*Q.* Would you like me to bring it to your—to refresh your recollection?
"*A.* Well, yes, it wouldn't do any harm.   *   *   *
"*Q.* Now, what movement was made by Robinson, if any?
"*A.* I think my testimony said there was movement, made, I don't know which one made it."

Plaintiffs' counsel thereupon interrogated the witness in regard to the statement he had made to the prosecutor, the reference to that statement being made subject to defendants' objection. The witness then answered:

"*A.* As I recall it, as you read it now, that is just about what happened."

During further examination, Cubley stated:

"*A.* He was not under the influence of liquor when I saw him. I mean he was under no influence at all to my knowledge."

Upon reference by plaintiffs' counsel to Cubley's previous statement and objection by defendants, the court ruled that the witness should be permitted to explain and reconcile the statements. The witness then proceeded to explain what he meant by "influence of liquor."

During direct examination of Robinson, counsel for plaintiffs again referred to a statement that Robinson had made at the prosecutor's office. Robinson had previously stated that "the prosecutor asked me many questions when he took me in to question me, but I don't recall anything indicating to be drunk." This reference to the former statement

was spontaneous and did not result from questioning in that regard by counsel. The trial judge again ruled that the witness could be asked to explain his prior statement and be given the opportunity to reconcile any discrepancy. The witness then proceeded to explain his previous statement in the light of his testimony at the trial.

The use of these statements by plaintiffs' counsel during direct examination is set forth by defendants as error, it being alleged that the use of these statements amounted to impeachment of the plaintiffs' own witnesses.

In *Hickory* v. *United States,* 151 US 303 (14 S Ct 334, 38 L ed 170), the supreme court stated (p 309):

"When a party is taken by surprise by the evidence of his witness, the latter may be interrogated as to inconsistent statements previously made by him for the purpose of refreshing his recollection and inducing him to correct his testimony; and the party so surprised may also show the facts to be otherwise than as stated, although this incidentally tends to discredit the witness."

And in *Bullard* v. *Pearsall,* 53 NY 230, the New York court stated (p 231):

"We are of opinion that such questions may be asked of the witness for the purpose of probing his recollection, recalling to his mind the statements he has previously made, and drawing out an explanation of his apparent inconsistency. * * * It is only evidence offered for the mere purpose of impeaching the credibility of the witness, which is inadmissible when offered by the party calling him. Inquiries calculated to elicit the facts, or to show to the witness that he is mistaken and to induce him to correct his evidence, should not be excluded simply because they may result unfavorably to his credibility. In case he should deny having made previous statements inconsistent with his testimony,

we do not think it would be proper to allow such statements to be proved by other witnesses."

This Court in *People* v. *Nankervis*, 330 Mich 17, stated (p 20):

"The people called as witnesses persons connected with the transactions which resulted in defendant receiving bribes. Upon being examined, they proved to be very unwilling, reluctant and forgetful witnesses, professing not to know or remember things which they readily remembered as soon as they were confronted with questions and answers made by them in written statements given by them to the prosecuting attorney some time before trial. Such use of written statements, to refresh memories of reluctant witnesses for the people, does not amount to their impeachment, as defendant claims, and is permissible practice. *People* v. *O'Neill*, 107 Mich 556; *People* v. *Prevost*, 219 Mich 233; *People* v. *Hallas*, 257 Mich 127."

In *Bresch* v. *Wolf*, 243 Mich 638, Justice NORTH stated (pp 643, 644):

"Was the method of direct examination of the witness Harold Grabill, as permitted by the court, improper and prejudicial? Before the trial this witness had signed an affidavit relating to this case. It is evident that because of an unwilling attitude or because of a failing memory the witness did not answer certain questions put to him by plaintiff's counsel as it was expected he would, in view of the contents of the affidavit. We think the record discloses a condition which justified the circuit judge in concluding that the witness was hostile and in permitting leading questions to be asked of him, and also in permitting counsel to confront the witness with his own affidavit for the purpose of refreshing his recollection. Such matters rest largely in the discretion of the trial court. *McGee* v. *Baumgartner*, 121 Mich 287; *People* v. *Johnson*, 186 Mich 516."

See, also, *Gilbert* v. *Michigan Central Railroad Co.,* 116 Mich 610; *People* v. *Case,* 105 Mich 92; *People* v. *Korn,* 217 Mich 170; *People* v. *Payne,* 131 Mich 474; *People* v. *Gillespie,* 111 Mich 241; *Dillon* v. *Pinch,* 110 Mich 149, and the many cases cited in the annotation 74 ALR 1042. Also, 3 Wigmore on Evidence (3d ed), § 905.

This Court has held that prior statements may not be used when the sole purpose in their use is to impeach the credibility of a party's own witness. See *Farthing* v. *Hepinstall,* 243 Mich 380. But when the purpose of referring to the prior statement is to refresh the memory of a witness or to induce the witness to explain an apparent inconsistency, the prior statement may be referred to during direct examination.

In *Westphal* v. *St. Joseph & Benton Harbor Street-R. Co.,* 134 Mich 239, this Court held that a party may not impeach his own witness by showing prior contradictory statements. In that case the witness had denied making any prior contradictory statement; therefore, the sole purpose in continuing that line of examination would have been to directly discredit and impeach the witness.

It is recognized that in this State in criminal cases the people may impeach *res gestae* witnesses whom they are obliged to call. CL 1948, § 767.40a (Stat Ann 1953 Cum Supp § 28.980[1]) and *People* v. *Elco,* 131 Mich 519, 523. It is to be noted that in *People* v. *Nankervis, supra,* the prior statements were used to refresh the memory of a witness and such was held not to amount to impeachment.

Defendant Kelley asserts as a third ground of appeal that the action of the trial court in ordering the consolidation of the 6 cases for the purposes of trial was improper. The applicable statute (CL 1948, § 608.1 [Stat Ann § 27.591]) provides:

"The plaintiff may join in 1 action, at law or in equity, as many causes of action as he may have against the defendants, but legal and equitable causes of action shall not be joined; but when there is more than 1 plaintiff, the causes of action joined must be joint, and if there be more than 1 defendant, the liability must be one asserted against all of the material defendants, *or sufficient grounds must appear for uniting the causes of action in order to promote the convenient administration of justice,* or when several suits shall be commenced against joint and several debtors, in the same court, the plaintiff may, in any stage of the proceedings, consolidate them into 1 action. If it appear that any such causes of action cannot be conveniently disposed of together, the court may order separate trials, or whenever several suits shall be pending in the same court, by the same plaintiff against the same defendant, for causes of action which may be joined, the court in which the same shall be prosecuted may, in its discretion, order the several suits to be consolidated into 1 action." (Emphasis added.)

It is, therefore, within the trial court's discretion to order the consolidation of actions where the same legal and factual issues are involved, where the same testimony applies, and where the consolidation will not prejudice either party. Under the terms of the statute, the consolidation must unite causes of action which may, in the first instance, be joined. The statute provides that causes of action may be joined by plaintiffs where that result would promote the convenient administration of justice. See *Goodrich v. Waller,* 314 Mich 456, and *Gilmer v. Miller,* 319 Mich 136.

Defendant relies on the case of *Card v. Nemecek,* 331 Mich 614. In that case the consolidation of separate suits was ordered over the objection of the plaintiffs. The lower court, recognizing the prejudicial effect of consolidation, granted a new trial to

the appellant's wife. This Court, although divided, held that the entire record disclosed that plaintiff, the appellant, had also been prejudiced by the consolidation and reversed and remanded for a new trial.

In the case of *Gilmer* v. *Miller, supra,* this Court held that although common-law principles would have necessitated a finding of misjoinder of plaintiffs, the joinder of parties and causes of action in that case was proper since the facts clearly indicated that "the convenient administration of justice will thereby be promoted." Justice Carr there noted that there was no showing that the defendant would in any way be prejudiced and that the joinder would be to his advantage in having the issues involved litigated in one proceeding. It was also noted that the plaintiffs' claims arose under the same contract and that the factual issues were not complicated. Similar reasoning is well applied to the present case.

The right of the plaintiffs to join causes of action where the convenient administration of justice will be promoted gives the court discretionary authority to consolidate cases where the plaintiffs could have exercised that right. It is claimed that the *Card Case, supra,* indicates that the statutory power of the court to order consolidation of cases is to be strictly construed. Even if we assume that the *Card Case* correctly states that the sole authority for the ordering of consolidation is derived from the statute, the action of the trial court in the present case falls within the statutory authority.

As stated in *Gilmer* v. *Miller, supra* (p 143):

"The language above quoted from our present statute as to joinder of actions and parties is broad in its provisions and goes far beyond the practice previously observed. *Otto* v. *Village of Highland Park,* 204 Mich 74, 81."

*Rosecrants* v. *Shoemaker*, 60 Mich 4, a case arising under an early civil damage act for the unlawful sale of liquor, states that the mother of minor children may sue in one action to recover full compensation for the loss to the entire family. If this Court were to now hold that the consolidation in the present case was improper, we would, in effect, be construing the present statute as more restrictive procedurally than was the former practice. The *Rosecrants Case* was decided prior to the enactment of the judicature act of 1915, of which chapter 8, § 1, is set forth above (CL 1948, § 608.1 [Stat Ann § 27.591]). To strictly construe an admittedly liberal statute would be to defeat the basic purpose of the statute.

Defendant Kelley objected to the consolidation of the cases claiming a consolidation of the cases in which he was the sole defendant with the cases in which he was a codefendant with the surety company would be prejudicial. Under the statute the liability of the licensee and the surety is joint and several. Each of the plaintiffs, therefore, could properly join the licensee and the surety as defendants. The fact that the surety company was dismissed as a defendant in 5 of the cases would not, therefore, constitute resultant prejudice in the subsequent consolidation of the cases for the purpose of trial.

The propriety of consolidation is to be determined entirely by the state of facts existing prior to the consolidation. Nevertheless, it is significant to note that the verdicts of the jury apparently were uninfluenced by the fact that the surety company was a codefendant in one case. The verdict of $2,000 in that case, the same as in the cases of the other minor children, was not predicated upon the $5,000 maximum liability of the surety's bond. This would indicate that there was no basis for the claim that

defendant Kelley was prejudiced by the consolidation.

The judgments are affirmed, with full costs of the case to plaintiffs but costs are only to be assessed in one case and the amount thereof to be equally divided among the 6 plaintiffs and added to their respective judgments. *Watkinson* v. *Reichle,* 292 Mich 484 (7 NCCA NS 398).

CARR, BUSHNELL, SHARPE, BOYLES, REID, DETHMERS, and KELLY, JJ., concurred.