### SCHRATT *v.* FILA.

1. Witnesses—Impeachment—Prior Inconsistent Statements—. Substantive Evidence.

   Prior inconsistent statements may not only be used to impeach the testimony of a witness, but when admitted by the witness to have been true, they may be substantive evidence even when offered for impeachment purposes.

2. Evidence—Prior Inconsistent Statements—Explanation.

   Evidence of a previous inconsistent statement, when the declarant is on the stand to explain it if he can, has in high degree the safeguards of examined testimony.

---

References for Points in Headnotes

[1, 2] 58 Am Jur, Witnesses §§ 767–770.
   20 Am Jur, Evidence § 458.
[3] 20 Am Jur, Evidence §§ 101–103, 876.
   Judicial notice of intoxicating quality, and the like, of a liquor or particular liquid, from its name. 49 ALR2d 764.
[4] 30 Am Jur, Intoxicating Liquors § 556.

3. INTOXICATING LIQUORS—BEER DRINKING—EVIDENCE OF INTOXICA-
TION.

   Judicial notice is taken that it is unnecessary to have expert tes-
   timony that consumption by 1 individual of 10 to 12 glasses
   of beer in an afternoon is sufficient to cause intoxication (CLS
   1956, § 436.22).

4. SAME—ILLEGAL SALE—EVIDENCE.

   Evidence presented in action under civil damage provisions of
   liquor control act *held*, sufficient to support referral to jury
   of questions as to whether plaintiff's assailants had been at
   appellant's bar before assaulting plaintiff and whether they
   were manifestly intoxicated at time intoxicating liquor was
   then sold to them (CLS 1956, § 436.22).

Appeal from Saginaw; O'Neill (James E.), J.
Submitted March 8, 1963. (Calendar No. 85, Docket
No. 49,373.) Decided October 10, 1963.

Case by Francis Schratt against Edwin L. Fila,
Max Young, and Mack N. McAllister for assault
and battery, and against Norman J. Ziegler, doing
business as Janes Bar, John Navarro and Alice
Navarro, doing business as Johnny's Tavern, and
Leo A. Smigiel, doing business as Smigiel's Bar, for
damages under the civil damage section of the liquor
laws. Verdict and judgment for plaintiff against de-
fendants Fila, Young, McAllister and Ziegler. De-
fendant Ziegler (Janes Bar) appeals. Affirmed.

*Peter F. Cicinelli* and *Eugene D. Mossner,* for
plaintiff.

*Stanton, Taylor, McGraw & Collison,* for defend-
ant Ziegler, doing business as Janes Bar.

SMITH, J. Plaintiff instituted suit against the
named defendants for damages arising out of in-
juries sustained by plaintiff as the result of an as-
sault upon him shortly after midnight on the morn-

ing of July 20, 1958. Plaintiff's cause of action against defendants Fila, Young, and McAllister is based upon assault and battery; action against defendant tavern owners is brought under provisions of the civil damage act (CLS 1956, § 436.22 [Stat Ann 1957 Rev § 18.993]).* Prior to trial, defendant Smigiel was released by a convenant not to sue, and defendants John and Alice Navarro, d/b/a Johnny's Tavern were dismissed upon motion of plaintiff at the close of proofs. The case went to the jury against Fila, Young, and McAllister and the remaining tavern owner, defendant-appellant Ziegler; the jury brought in a verdict against all 4 in the amount of $10,000. Two special questions were answered in favor of plaintiff. From judgment on this verdict, defendant Ziegler appeals.

The record shows that defendants Fila, Young, and McAllister, except for a brief separation, were together from late Saturday afternoon of July 19, through the early hours of July 20, 1958. It is undisputed that during this time substantial quantities of beer and some whiskey were consumed by each of them. Plaintiff, an engineer at a television station, was driving home from work when he encountered Fila, McAllister, and Young. They flagged plaintiff down on a lonely road and requested assistance in moving their disabled car. Plaintiff consented, and 1 of the men suggested that plaintiff get out of his car and personally check the alignment of bumpers of the 2 vehicles. As plaintiff bent over to look, he was severely assaulted and robbed. Shortly thereafter, Fila, McAllister, and Young were apprehended and prosecuted for their crime.

---

* "Every wife, husband, child, parent, guardian or other persons who shall be injured in person or property, means of support or otherwise, by an intoxicated person by reason of the unlawful selling, giving or furnishing to any such persons any intoxicating liquor, shall have a right of action."

From an order denying appellant's motion for judgment notwithstanding the verdict or in the alternative for a new trial, appeal is taken. Appellant urges 2 grounds for reversal: (1) that there is no substantive evidence that assailants were in appellant's bar prior to the assault; and (2) that there is no evidence whatsoever to show that the assailants were sold intoxicating liquor, in violation of the statute, even if it be found that they were in appellant's bar prior to the assault.

## A. *Defendant's prior statement as substantive evidence.*

Appellant claims that there was no substantive evidence that the assailants, Fila, Young, and McAllister were in his bar, Janes Bar, prior to the assault. The contention arises out of the nature of proofs offered on this point. Defendants Fila, Young, and McAllister were called by plaintiff for cross-examination under the statute. CL 1948, § 617.66 (Stat Ann § 27.915). Neither Young nor McAllister was certain whether they were in Janes Bar before or after the assault, although Young testified that "to the best of my knowledge" he was in Janes Bar after the assault. Fila testified, in response to questions put to him by plaintiff's attorney, that they were in Janes Bar after, not before, the assault. Fila was then confronted with a written statement given by him to State police officers investigating the assault and robbery. The statement was given in the presence of 3 officers on the same day of the crime, July 20, 1958. Each page of the statement was initialed by Fila, and, at the end, it bore his signature, all this by his own admission. The statement was in conflict with Fila's testimony in this way: the statement contained an answer indicating that the assailants were in Janes Bar before

the assault. Over appellant's strenuous objections, plaintiff's attorney was permitted to elicit the following answers:

"*Q.* Were you asked the following questions by State Police Detective Barkell and did you give him these answers, '*Q.* Where did you go in Saginaw?' Your answer, '*A.* Went to Johnny's Bar on Fifth and Janes.' * * * '*Q.* Did you meet anyone there?' Your answer, '*A.* Max Young.' '*Q.* Had this meeting with Max Young been prearranged?' Your answer, '*A.* Yes, it was. He just said if we came to Saginaw he would be there.' '*Q.* Where did he tell you he would be at Johnny's Bar?' Your answer, '*A.* At Mack's (or Mac's) house in Midland.' '*Q.* What time was this meeting?' '*A.* Approximately 10 p. m.' '*Q.* How long did you stay at Johnny's Bar?' Your answer, '*A.* About 15 minutes.' '*Q.* Did you then leave the bar?' Your answer, '*A.* Yes, we did.' '*Q.* Was Mac and Max with you?' '*A.* Yes, they were.' '*Q.* After leaving the bar, where did you go?' Your answer, '*A.* Janes Bar, on Janes, between Twenty-fifth and Twenty-sixth.' * * *

" '*Q.* How long did you stay at this bar? *A.* About half hour. *Q.* What time did you leave this bar? *A.* I don't know what time it was, didn't pay no attention. *Q.* Where did you go after leaving this bar? *A.* Went to Indiantown. *Q.* How long did you stay at the Indiantown Bar? *A.* About half an hour.' Let me ask you, were you, at that time, asked these questions by Officer Barkell?

"*A.* Yes."

It should be explained that plaintiff was seeking, at this point, to prove his theory that the assailants, after consuming substantial amounts of beer between 6 p.m. and 9:30 p.m., on this Saturday night, then met in Johnny's Bar on Janes avenue in the city of Saginaw. Plaintiff claimed that the trio left Johnny's, drove east to another point along Janes avenue where they consumed some beer in the car;

that, thereafter, they continued on to Janes Bar: then easterly again on Janes avenue to Portsmouth road, north on said road to the Indiantown Bar, and from there to a point on Portsmouth road where plaintiff was assaulted. Defendant-appellant asserts that the 3 men came to his bar, Janes, at a time after the assault occurred. Plaintiff emphasizes the physical location of the bars and the likelihood of the itinerary set out in the written statement, if such is admissible.

Plaintiff's attorney then sought to draw an admission from Fila that the written statement as made to police officers was true. Varying responses were obtained. In part, they are quoted herewith:

"*Q.* And, of course, what you told the police at that time was true?

"*A.* To what I thought it was, yes.  \* \* \*

"*A.* The questions they asked me, I gave them the answers to, did I answer them right?

"*Q.* Right.

"*A.* As far as I knew, yes. When they asked me the questions, they just asked the bars I went to. I just named the bars, but I didn't give them no whole detail, like I did when I went to court, and that as to what all happened.

"*Q.* You heard the court reporter repeat the questions I asked you this morning and the answer you gave to me as to whether or not you read that statement?

"*A.* Yes.

"*Q.* And you signed it?

"*A.* Yes, sir.

"*Q.* Isn't that the truth, what you said in that statement?

"*A.* Yes, but I wasn't thinking about it. They didn't ask in rotation, that I give the 3 bars in rotation.  \* \* \*

"*A.* That was the truth. I gave them that statement, yes, but they just asked me where I went. I

gave them the names of the bars. I didn't give them in a row,—in order. * * *

"*Q*. Do you claim to be oblivious and didn't know what you were saying?

"*A*. No, I knew what I was saying.

"*Q*. After things were explained, as you say, you decided to tell the truth?

"*A*. Yes.

"*Q*. And what you told them was the truth?

"*A*. Yes, sir."

Undoubtedly, prior inconsistent statements are admissible to impeach the testimony of a witness. However, as appears above, plaintiff finally drew an admission from Fila that the prior written statement given to State police was true. Obviously, this was done to bring the statement within the rule of *Perry* v. *F. Byrd, Inc.*, 280 Mich 580. In that case, this Court held that "Notwithstanding the fact that a written statement is offered solely for impeachment purposes, so much thereof as a witness at the time adopts by admission of the truth thereof becomes substantive evidence." Appellant contends, however, that the statement made to the State police "is clearly hearsay, inadmissible and certainly not substantive proof."

In *Perry* v. *F. Byrd, Inc., supra,* 2 of plaintiff's witnesses previously had signed written statements contradicting their testimony at the trial. Both statements were offered for the purpose of impeachment. In addition to the ruling that so much of the statement as a witness adopts by admission of the truth thereof becomes substantive evidence, we also held as follows:

"Had the written statements made prior to the trial merely been identified by the witness or the contents denied, they could be used only for impeachment purposes." Citing, *Rosenberg* v. *Mageda,* 251 Mich 696.

Obviously, we are seeking to determine whether or not Fila's answers on cross-examination, inconsistent as they are, constitute an admission of truth as to any or all of the matters given in the prior written statement to the police. As we construe his answers, they amount to this: the accuracy of the prior statement is admitted, but Fila seeks to explain that his statement was not meant the way it reads. We refer back to the written statement quoted above in which Fila answers that after the trio left Johnny's Bar they went to Janes Bar, and thence to the Indiantown Bar; thereafter occurred the assault. It is to be remembered that Fila's testimony on trial flatly contradicts the itinerary given in the statement. How then does the rule in *Perry* v. *F. Byrd, Inc.,* apply here? In the *Perry Case,* written statements made before trial could be used only for impeachment purposes, if the statements were merely identified by the witness or the contents denied. In the instant case, certainly Fila did more than identify the statement. It is also equally clear from the quoted testimony that he did less than deny the contents of the statement. It would seem therefore that under the rule in the *Perry Case,* use of the statement in this case cannot be confined to impeachment purposes. Even though Fila admits the truth of his statement but then denies its effect, to exclude the statement as substantive evidence is to block from the court a valuable piece of evidence without good reason. We agree with the view stated in McCormick on Evidence, § 39, p 75:

"If the prior statement of the witness is contradictory of his present story on the stand, the opportunity for testing the veracity of the 2 stories by the 2 parties through cross-examination and re-examination is ideal. Too often the cross-examiner of a dubious witness is faced by a smooth, blank wall. The witness has been able throughout to present a

narrative which may be false, yet is consistent with itself and offers no foothold for the climber who would look beyond. But the witness who has told one story aforetime and another today has opened the gates to all the vistas of truth which the common-law practice of cross-examination and re-examination was invented to explore. It will go hard, but the 2 questioners will lay bare the sources of the change of face, in forgetfulness, carelessness, pity, terror or greed, and thus reveal which is the true story and which the false. *It is hard to escape the view that evidence of a previous inconsistent statement, when the declarant is on the stand to explain it if he can, has in high degree the safeguards of examined testimony.*" (Emphasis supplied.)

We conclude, therefore, that the prior written statement of defendant Fila was admissible as substantive evidence. Confusing and self-contradictory as Fila's testimony was, it was properly a question for the jury. A special question was submitted to the jury:

"1. Were defendants, Fila, McAllister and Young, in the defendant, Janes Bar, prior to the assault upon plaintiff?"

The jury answered "Yes."

### B. Proofs for jury on unlawful sale.

Were proofs sufficient to go to the jury on the question of unlawful sale? Appellant argues that there was no evidence that the assailants "were sold or furnished any intoxicating beverage in appellant's bar, when they were intoxicated." Appellant cites a number of cases on this point, including *Juckniess* v. *Supinger,* 323 Mich 566; *Wyatt* v. *Chosay,* 330 Mich 661; and *Davis* v. *Terrien,* 364 Mich 82. Either case may be cited for the proposition, among others, that in cases against taverns, it is incumbent upon plaintiff to establish that he is injured as a result of

the selling of intoxicating liquor to a person who was already intoxicated when sold the liquor. However, in appellant's brief we are not favored with a statement of how he views the evidence, such as it was, produced by plaintiff on this point. We are told simply that there is none.

The record does not support appellant's position. There is ample evidence of drinking on the part of Fila, McAllister and Young prior to the time of arriving at Janes Bar at approximately 11 p.m. on July 19th. McAllister testified that 12 bottles of beer were purchased and consumed by the 3 men between middle and late afternoon of that day. He had "2 more bottles of beer" between 6 and 10 p.m. Then at Johnny's Bar, he drank another beer. He confirmed the fact that the other 2 drank beer in similar quantities. This, plaintiff claims, happened all before the trio went to Janes Bar. McAllister testified that he may have felt "a little silly", but that he was not drunk. He said that he was "feeling pretty good. The reflexes were slow, and that, and the thinking matter was slow." However, he did not remember whether he was in Janes Bar before or after the assault; but he did not assert that he was not in Janes Bar before the assault. He did remember being in the bar and drinking, sometime during the night. Fila confirmed his drinking, but claimed it had no effect on him. Young said that he had done "more drinking between the hours of 10 and 1, probably, than I had done in an awful long time."

In *Higdon* v. *Kelley*, 339 Mich 209, 215, this Court held:

"We do not believe that expert testimony is necessary to show that 10 to 12 glasses of beer in an afternoon are sufficient to cause intoxication."

By the way of summary, in this case, we have testimony of drinking, minimally, 7 or 8 beers each before

entering Janes Bar. All 3 men admit drinking while in Janes Bar. While we do not attempt to equate bottles of beer (as in this case) with glasses of beer (as in *Higdon*), we think the testimony was ample to go to the jury on whether the 3 men were intoxicated upon entering Janes Bar, and whether purchases were made therein.

Special question No 2 was submitted to the jury as follows: if you find that Fila, McAllister, and Young were in Janes Bar prior to the assault, were they "manifestly intoxicated while in Janes Bar prior to the assault on the plaintiff?" The jury answered "Yes."

Affirmed. Costs to appellee.

CARR, C. J., and DETHMERS, KELLY, BLACK, KAVANAGH, SOURIS, and O'HARA, JJ., concurred.