**Benjamin J. BRINKS, Administrator of the Estate of Gertrude Ann Brinks, Deceased, Plaintiff-Appellant,**

v.

**CHESAPEAKE & OHIO RAILWAY COMPANY, Defendant-Appellee.**

No. 18034.

United States Court of Appeals
Sixth Circuit.
July 29, 1968.

---

Wallson G. Knack, Grand Rapids, Mich. (Wallson G. Knack, Warner, Norcross & Judd, Grand Rapids, Mich., on the brief), for appellant.

Paul O. Strawhecker, Grand Rapids, Mich. (Paul O. Strawhecker, Grand Rapids, Mich., Robert A. Straub, Detroit, Mich., on the brief; H. Rhett Pinsky, Grand Rapids, Mich., of counsel), for appellee.

Before O'SULLIVAN and PHILLIPS, Circuit Judges, and CECIL, Senior Circuit Judge.

PHILLIPS, Circuit Judge.

Mrs. Gertrude Ann Brinks, a thirty-one year old housewife and mother of three children, was killed January 23, 1964, when the car which she was driving was struck by a Chesapeake & Ohio train. She drove her car onto the tracks directly into the path of the train. She had left dinner in the oven for her husband and children and was en route to the home of her mother-in-law at the time of the fatal accident.

Mrs. Brinks had no physical defects of any kind which might tend to impair her ability to drive an automobile.

Her vision was normal. Her car was in good mechanical condition and the brakes were in working order. She was familiar with the railroad crossing, which was in open country. The accident occurred shortly after 4:00 p. m. in daylight. Visibility was good.

This action for wrongful death is brought by her husband as administrator. Jurisdiction is based upon diversity of citizenship. Michigan law controls.

The District Court let the case go to the jury, which returned a verdict of $46,000 against the railroad. After the verdict the District Court denied the railroad's motion for judgment n. o. v. Later the District Court set aside its denial of the motion for judgment n. o. v. and granted judgment in favor of the railroad. Plaintiff appeals.

To reverse the decision of the District Court plaintiff relies upon two alleged incidents of subsequent negligence on the part of the railroad: (1) failure to throw the emergency brake in time and (2) failure to blow the whistle.

The question on appeal is whether there was sufficient evidence to warrant submission of plaintiff's case to the jury on either of these two theories. The facts will be stated only to the extent necessary to dispose of this question.

■ A motion for judgment n. o. v. may be granted only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment. 5 Moore, Federal Practice ¶ 50.07 (2d ed.).

■ In order to establish subsequent negligence under Michigan law the plaintiff must prove the following circumstances:

"[T]hat the plaintiff's negligence had put him in a position of peril; that such negligence thereafter ceased to operate as an efficient cause of the pleaded injury; that the defendant could and should have discovered the plaintiff's peril in time to avoid such injury by the employment of safe means at ready hand, and that the defendant failed to so discover and act

as would a person exercising due care under like circumstances." Shafkind v. Kroll, 367 Mich. 42, 45–46, 116 N.W. 2d 58, 60.

The proof should be clear and convincing that the defendant discovered or should have discovered the plaintiff's peril by the exercise of ordinary care and diligence and by the use of the means at hand had time to avert the threatened injury. Davidson v. City of Detroit etc., 307 Mich. 420, 430, 12 N.W.2d 413.

Viewing the testimony in the light most favorable to the plaintiff, we conclude that there is no evidence that the railroad could have realized the peril of Mrs. Brinks in sufficient time to avoid the accident by applying the emergency brake. The only evidence of probative value is to the effect that when the railroad's fireman first saw Mrs. Brinks' automobile, the train was 200 feet from the crossing and Mrs. Brinks' vehicle was 150 feet from the same crossing. The evidence establishes that Mrs. Brinks could have stopped her automobile within 117 feet, some 33 feet before she reached the track. It is undisputed that retardation of the train would require that its emergency brake be thrown 264 feet before reaching the crossing.

Thus, from the time the fireman first saw the approaching vehicle, Mrs. Brinks could have stopped her car before reaching the crossing. The motion of the train could not have been retarded until it was 64 feet past the crossing.

■ The Michigan Supreme Court has held that there is no duty for a railroad train to reduce its speed until it realizes that an approaching vehicle will not stop.

In Buchthal v. New York Central R. R. Co., 334 Mich. 556, 562–563, 55 N.W.2d 92, 95, the Court said:

"Plaintiff contends that under the admitted conditions of good visibility the train crew, particularly the fireman and the engineer, charged with the duty of observing persons lawfully crossing the tracks and of maintaining a reasonable lookout, should have stop-

ped the train when the car became visible. There was no duty upon the train crew to slow down the train or stop, even if they had seen the car. In Piskorowski v. Detroit, G. H. & M. R. Co., 121 Mich. 498, 80 N.W. 241, 80 Am.St.Rep. 518, we held that a hand-car crew was not negligent as to a pedestrian unless they realized that the traveler would not stop and the crew have a right to assume that he will stop. We have held that at a country crossing there is no reason to slacken speed unless danger is apparent. See Tucker v. Chicago & Grand Trunk R. Co., 122 Mich. 149, 80 N.W. 984; Knickerbocker v. Detroit, G. H. & M. R. Co., 167 Mich. 596, 133 N.W. 504; Rushford-Surine v. Grand Trunk R. Co., 239 Mich. 19, 214 N.W. 168; Tomes v. Detroit, T. & I. R. Co., 240 Mich. 133, 215 N.W. 308. It is obvious that, under plaintiff's own testimony, had the train crew realized that the motorist intended to continue across the tracks it would have been too late to prevent the accident. Whether they made an actual observation becomes immaterial."

Under the facts of the present case, by the time it became clear that Mrs. Brinks would not stop her car the accident could not have been avoided by use of the train's emergency brake. In short, the evidence is susceptible of no reasonable interpretation except that the engineer and fireman could not have perceived the plaintiff's peril in time to avoid the injury by the use of due care.

■■ In order to avoid the deficiency of substantive evidence plaintiff relies upon a statement given by a railroad employee prior to trial. This extrajudicial statement was to the effect that Mrs. Brinks' automobile was about 100 feet, not 150 feet, from the crossing when first seen by the fireman. Plaintiff is not entitled to rely on this extrajudicial statement as substantive evidence. Extrajudicial statements are admissible for purposes of impeachment. Kalamazoo Yellow Cab Co. v. Kalamazoo Circuit Judge, 363 Mich. 384, 387, 109 N.W.2d

821. At trial this witness explained that this prior written statement was only intended as a rough approximation and this contention is substantiated by his use of the phrase "about 100 feet." In any event the prior statement cannot be used as substantive evidence because the witness did not admit that the prior statement was true. Ruhala v. Roby, 379 Mich. 102, 150 N.W.2d 146; Perry v. F. Byrd Inc., 280 Mich. 580, 274 N.W. 335; but see Schratt v. Fila, 371 Mich. 238, 123 N.W.2d 780.

■ To support its assertion that the railroad whistle was not blown, plaintiff relies solely upon negative evidence. In order for negative testimony to carry an issue of fact to the jury, it must be shown that the witness giving the negative testimony was in a position where he normally would have heard what he failed to hear on the particular occasion.

"The Supreme Court of Michigan has held that testimony of several witnesses, though negative in character, that from positions at which they might have heard they did not hear crossing signals sounded, to be sufficient to carry the question to the jury. Cinadar v. Detroit, G. H. & M. R. Co., 193 Mich. 38, 49, 159 N.W. 312; Crane v. Michigan Central Railroad Co., 107 Mich. 511, 65 N.W. 527; Pennsylvania R. Co. v. Ackerson, 6 Cir., 183 F.2d 662, 665. In Grand Trunk Western Ry. Co. v. Heatlie, 6 Cir., 48 F.2d 759, 760, this court said that it has never accepted the doctrine in effect in some jurisdictions that evidence of the failure of witnesses to hear train signals does not make a case for the jury as against positive and affirmative testimony that signals were given; pointed to our holding that 'where a witness is in a position where he would normally hear, his failure to do so presents an issue as to the existence of the fact.' Detroit Southern R. Co. v. Lambert, 6 Cir., 150 F. 555; and Baltimore & Ohio R. Co. v. O'Neill, 6 Cir., 186 F. 13, were cited. See also Grand Trunk Western Ry. Co. v. Collins, 6 Cir., 65 F.2d 875, 876." Patterson v. Pennsyl-

vania R. R. Co., 238 F.2d 645, 647 (6th Cir.).

For an excellent discussion see Judge Talbot Smith's opinion in Dalton v. Grand Trunk Western R. R. Co., 350 Mich. 479, 87 N.W.2d 145.

■ The railroad introduced strong affirmative evidence that the whistle was blown. Applying the standards set forth in *Dalton,* supra, plaintiff failed to establish that the witnesses who did not hear the whistle were in a position in which they normally would have heard the sound. Because of their activities, their physical locations, their employment duties, as well as their tenuous and equivocal responses, the negative testimony of these witnesses is of no value as substantive evidence and is insufficient, standing alone, to require submission of the case to the jury. We hold that there was no evidence from which the jury could find that the railroad failed to blow the whistle as it approached the crossing.

Affirmed.