PEOPLE v. KNOX.

1. WITNESSES—REFRESHING RECOLLECTION—ABORTION.
   Admission in evidence before jury and over objection by defendant, in prosecution for criminal abortion of a single question and answer thereto which 16-year-old witness had given in prosecutor's office 26 days after the alleged abortion had been performed upon her as to what defendant had said with reference to the disposition of the fetus, *held*, not prejudicial error, where the memory of the witness was refreshed and she remembered the question and answer involved and then stated the answer that had previously been given was true (CL 1948, § 750.14).

2. SAME—REFRESHING RECOLLECTION—NECESSITY.
   Counsel have a right to refresh the recollection of a witness by calling attention to prior statements or testimony, where the necessity for such action is reasonably apparent in either a civil or criminal action.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 58 Am Jur, Witnesses §§ 570, 578 *et seq.*
Refreshment of recollection by use of memorandum or other writings. 125 ALR 19.
[3, 4] 12 Am Jur, Continuances § 28.
[5] 1 Am Jur, Abortion §§ 50–53.
[6] 53 Am Jur, Trial §§ 88–90.
[7] 53 Am Jur, Trial §§ 115, 116.
[8] 53 Am Jur, Trial §§ 579, 580.
[9] 20 Am Jur, Evidence § 246 *et seq.*
[10] 58 Am Jur, Witnesses § 578 *et seq.*; § 767 *et seq.*

3. CRIMINAL LAW—ADJOURNMENT—PRODUCTION OF WITNESSES—DISCRETION OF COURT.

Refusal of the trial court to grant an adjournment in the trial of defendant for criminal abortion to allow defense sufficient time to produce a physician whose testimony was alleged to be favorable to the defense, the refusal to grant an adjournment being based on the fact that the witness had not been subpoenaed although opportunity to do so had been afforded, is *held,* not an abuse of discretion under record presented, which failed to show trial court had been informed as to what testimony the witness might give when and if he appeared in court, no showing was made for continuance as required by court rule, nor that the witness would be brought to court to testify or would voluntarily appear for that purpose (CL 1948, § 750.14; Court Rule No 36 [1945]).

4. SAME—ADJOURNMENT—DISCRETION OF COURT.

A trial court has discretion in granting or refusing a motion for adjournment of a jury trial in a criminal case, and the Supreme Court will not interfere unless there has been a palpable abuse of discretion (Court Rule No 36 [1945]).

5. ABORTION—EVIDENCE.

Proofs adduced in jury trial in prosecution for criminal abortion *held,* to justify verdict of guilty (CL 1948, § 750.14).

6. APPEAL AND ERROR—COLLOQUY—REMARKS OF TRIAL COURT.

Casual reference of trial court in colloquy between court and counsel in prosecution for criminal abortion that "we have had testimony of 1 witness, that is the one directly involved in it, that such an operation was performed. Now, with that before us I think we can proceed perhaps a little more expeditiously" *held,* not to have been prejudicial to defendant.

7. CRIMINAL LAW—ABORTION—CHARACTER WITNESS.

Objection to testimony as to reputation for truth and veracity of defendant in prosecution for criminal abortion was properly sustained, where sought to be elicited from a witness prior to time defendant took the witness stand in his own defense.

8. SAME—REQUESTS TO CHARGE—INSTRUCTIONS—EVIDENCE—SPECULATION.

It was not error for trial court to refuse to give 3 certain requests to charge in the form in which they were submitted in prosecution for criminal abortion, where record indicates an absence of testimony to support them, and case was submitted to jury in a charge fully and carefully protecting the

rights of the defendant, since the requests might well have opened the door to speculation on the part of the members of the jury without supporting evidence (CL 1948, § 750.14)..

9. ABORTION—EVIDENCE—MATERIALITY.
    Testimony of 16-year-old girl upon whom defendant is alleged to have performed a criminal abortion as to exact dates and specific treatment given her by another doctor with respect to a boil with which she had been afflicted prior to the alleged abortion was properly excluded as lacking in materiality (CL 1948, § 750.14).

10. CRIMINAL LAW — WITNESSES — REFRESHING RECOLLECTION — IMPEACHMENT.
    Reversible error was not committed in prosecution for criminal abortion because certain questions and answers thereto by the witness in the prosecutor's office shortly after the offense was allegedly committed, were read to the witness on the trial, he admitted such statements were made and attempted to explain the variance between them and his other testimony at the trial, whether or not the attempt was to impeach, or refresh the recollection of, the witness (CL 1948, § 750.14).

KELLY, BLACK, and KAVANAGH, JJ., dissenting.

Appeal from Recorder's Court for the City of Detroit; O'Hara (John P.), J. Submitted April 13, 1961. (Docket No. 71, Calendar No. 48,865.) Decided November 30, 1961. Rehearing denied March 15, 1962.

Jacob M. Knox was convicted of criminal abortion. Affirmed.

*Paul L. Adams*, Attorney General, *Samuel J. Torina*, Solicitor General, *Samuel H. Olsen*, Prosecuting Attorney, *Samuel Brezner* and *Angelo A. Pentolino*, Assistant Prosecuting Attorneys, for the people.

*Robert J. Colombo*, for defendant.

*Frederick Yates*, for defendant on application for rehearing.

KAVANAGH, J. (*dissenting*). Defendant was convicted by a jury of performing a criminal abortion. The offense allegedly occurred in August, 1959, on the second or third visit of the patient to defendant doctor's office. The people's witnesses included the patient (a 16-year-old girl), her mother, and her mother's boy friend.

The mother and her boy friend testified they took the girl to defendant's office for examination on August 3, 1959, and, after examination by defendant doctor, the mother was told the girl was pregnant. The mother testified she inquired of the doctor whether or not an abortion could be performed, since she wanted the girl to finish high school, and the doctor advised he could do it upon payment of $350.

All 3 witnesses—the girl, her mother, and the mother's boy friend—testified that 4 days later they returned to defendant's office. The boy friend said he paid defendant $350—$150 by check, $175 in cash, and $25 by an I.O.U. They testified the doctor then took the girl into his office. The girl testified he probed her uterus with instruments until such time as she believed she had expelled something; that subsequently the doctor packed her, advising the girl and her mother the abortion had occurred and that he had disposed of the fetus in the toilet.

Defendant testified he examined the girl upon her mother's request and diagnosed her condition as a slight pelvic inflammatory disease with endometritis and eroded cervix, but that he found no evidence of pregnancy. He testified he prescribed a course of treatments; that the subsequent visits were in connection therewith; and claims to have charged $150 rather than $350.

During the course of the trial the prosecuting attorney found it necessary to refresh the recollection of 2 witnesses by reference to formal statements each

had previously made in the prosecuting attorney's office.

The first claim of error on appeal is that in allegedly refreshing the memory of the girl, the prosecuting attorney was allowed to read before the jury questions and answers from a statement taken from the witness several months prior to the trial of the case, even though the statement was not an exhibit nor had it been read to the witness. The following portion of the record is pertinent:

"*Q. (By Mr. Kotelly, the assistant prosecutor)* Did the doctor say anything at the time?

"*A.* Yes.

"*Q.* What did he say to you?

"*A.* He said that it was all over.

"*Q.* Did he say anything else?

"*A.* No.

"*Q.* Now, do you remember making a statement at the prosecuting attorney's office on the second day of September, 1959?

"*A.* Yes.

"*Q.* Now, to refresh your recollection, was this question asked you and you made this answer:

"*Mr. Gillis (defendant's counsel):* Now, wait a minute. Is the prosecutor attempting to impeach his own witness?

"*Mr. Kotelly:* Refreshing recollection.

"*Mr. Gillis:* I object. If he is using it for the purpose of impeachment it is all right.

"*The Court:* Well, can't he use a statement for purposes of refreshing recollection?

"*Mr. Gillis:* He can possibly, but if it is going to be a leading question.

"*The Court:* What you mean is there has been no foundation.

"*Mr. Gillis:* There is no foundation laid here.

"*The Court:* There isn't anything in this record yet showing that she has been unable to recollect anything.

*"Mr. Kotelly:* I asked if anything else was said and she said no. Now I am refreshing her recollection pertaining to that phase of it. That is the question.

*"The Court:* You are now referring to this occasion on September 2, 1959?

*"Mr. Kotelly:* September 11, 1959—no, August the 11th, I am referring to that.

*"The Court:* Let's see. You asked her what the doctor said and the doctor said it was all over. Then you asked what, well, did he say anything else.

*"Mr. Kotelly:* That is right.

*"The Court:* I see. That was on August, the 11th.

*"Mr. Kotelly:* The 11th.

*"The Court:* Yes, that is right.

*"Mr. Kotelly:* I am refreshing her recollection if this question was asked her in the statement and she made this answer.

*"Mr. Gillis:* Again, I don't think the proper foundation has been laid to do this. If he is impeaching her testimony today I don't think he should be—

*"The Court:* Well, he said it is refreshing recollection not impeachment, not impeaching testimony. He said that she made a statement at the prosecutor's office but you said that nothing else was said on August 11th. Now, if he claims something was and he wishes to refresh the witness' recollection it is proper to do so.

*"Q. (By Mr. Kotelly, continuing)* Now, do you recall this question being asked you by the assistant prosecuting attorney and you made this answer (*reading*) :

" 'Q. What did he tell you?'

"And your answer—

*"Mr. Gillis:* Now, wait. We have the question first. Let's see what her recollection is. I don't think he should read the answer. Do you recall this question being asked. I think that is as far as he should go at this time.

"*The Court:* Well, ask if she remembers that question.

"*Q.* (*By Mr. Kotelly, continuing*) Do you remember that question?

"*A.* Will you repeat it, please.

"*Q. (Reading)* '*Q.* What did he tell you?'

"*A.* Yes, I remember.

"*The Court:* Well, now, just a minute. If she remembers then you can ask her what she remembers.

"*Q.* Do you remember what your answer to that question was?

"*A.* I don't remember exactly what I said.

"*Q.* Well, now to refresh your recollection—

"*Mr. Gillis:* All right, again I think she doesn't remember exactly but she remembers the general tenor, or if she doesn't have, she doesn't have to use the exact words but she remembers it. I think she can answer it without leading on with this.

"*The Court:* Ask the witness if she has any recollection of what he said.

"*Q.* (*By Mr. Kotelly, continuing*) Well, do you recall what he said, what the doctor said to you after he made the examination on the 11th day of September, or on the 11th day of August, 1959, sorry?

"*A.* He says that it was all over and he went out of the room. That is all I can remember.

"*Mr. Kotelly:* Well, now I have a right to refresh her recollection.

"*The Court:* Well, now you laid a foundation for it. Go ahead.

"*Mr. Gillis:* Oh, wait. Again I am going to object. She remembers it. She remembers what?

"*Mr. Kotelly:* She just said she didn't remember.

"*Mr. Gillis:* I would like to ask 1 more question at this time.

"*The Court:* I don't think you have a right to interfere with this examination. She said she didn't remember anything more than that the doctor said it was all over.

"*Mr. Gillis:* All I am going to—she has read the transcript already this morning and if she can't remember for 15 minutes—

"*The Court:* I don't know whether she read it or not.

"*Mr. Gillis:* I would like to ask whether she has read it.

"*The Court:* While Mr. Kotelly is examining the witness I don't think you have a right to interrupt him.

"*Q.* (*By Mr. Kotelly, continuing*) Was this question asked you and you made this answer (*reading*):

" '*Q.* What did he tell you?
" '*A.* He told me that my baby was in the bucket, and he flushed it down the toilet stool.'

"*A.* Yes.

"*Q.* Was that question asked you and you made that answer?

"*A.* Yes."

Subsequently, Richard Warren, a boy friend of the girl's mother, was produced and examined as a prosecution witness. It is difficult to tell under what theory the prosecuting attorney was permitted to conduct the type of examination set forth below. He apparently felt he was doing it for the purpose of refreshing the recollection of the witness. However, the trial court seemed to permit it upon the theory of impeaching a *res gestae* witness.

"*Q.* (*By Mr. Kotelly*) Well, now do you remember making a statement in the prosecuting attorney's office on the second day of September, 1959.

"*A.* I don't know whether it was September, but I remember being in the prosecuting attorney's office.

"*Q.* You made a statement pertaining to the third day of August, 1959?

"*A.* After they had picked them up.

"*Q.* Pardon me?

"*A.* After they had picked up her mother and her aunt and had them locked up.

"*Q.* Then you went to the prosecuting attorney's office and made a statement?

"*A.* That I did.

"*Q.* You were asked questions and you made answers, isn't that true?

"*A.* That is right.

"*Q.* Now, do you recall as to whether this question was asked you by the assistant prosecuting attorney, Mr. Nissen, and you made this answer (*reading*):

" '*Q.* Can you tell me what happened that day?
" '*A.* Well, he examined her.'

"*Mr. Gillis:* I object. Let's have the answer to the first part, whether he remembers the question.

"*Mr. Kotelly:* All right.

"*Q.* (*By Mr. Kotelly, continuing*) Were these questions asked of you and you made these answers (*reading*):

" '*Q.* Do you remember about 3 or 4 weeks ago about August the 3d, it was a Monday, some incident in regard to Clara coming upstairs to your flat and you wasn't there?
" '*A.* No.'

"*Mr. Gillis:* I am going to object unless a proper foundation is laid for this reference to a previous statement.

"*The Court* [*Mr. Kotelly?*]: Well, you wanted me to go back to the date, he wanted me to go back to the date, if your Honor please, and I think I have a right to go ahead and satisfy his objection.

"*The Court:* Are you trying to satisfy his objection and by going back to this particular time?

"*Mr. Kotelly:* That is right.

"*Mr. Gillis:* What is the purpose of the reference to the previous statement. I think we need a foundation.

"*The Court:* You made an objection and Mr. Kotelly was asking a question and you made an objection to it. You said a proper foundation wasn't laid. I can't tell you what questions to ask or what not to ask, but I think, Mr. Kotelly, that you ought to go ahead and ask the question that you want to ask and then let me hear the objection that is made to it, and

I can pass upon it, but it is rather difficult for me to pass upon an objection when you say you are trying to comply with Mr. Gillis's objection.

"*Mr. Kotelly:* Well, let me put it this way, if I may, if your Honor please.

"*Q.* Did the doctor say anything about the condition of Shirley at the time that he made the examination?

"*A.* No.

"*Q.* Now, do you remember making this answer to this question at the prosecuting attorney's office (*reading*):

" '*Q.* Can you tell me what happened that day?

" ' *A.* Well, he examined her, then he called me and her mother in and said, "Oh, she's pregnant," said, "She's mighty young to be pregnant."

" 'I said, "Yes, she is," and I said, "I'm sorry that she's like that, because we wanted her to finish school."

" 'So he said, did we have any money; I told him, "No—I didn't have no money."

" 'So he said, "Well, if you had some money—" ' '

"*Mr. Gillis:* I object here. We have a series of questions here. I don't know what the foundation is or the purpose; whether it is to show contrary statements at a different time or refreshing his recollection. He just pulled a brief statement out of the air and started reading it.

"*The Court:* Well, take your first question and answer and ask him if he was asked the question and if he made the answer.

"*Mr. Kotelly:* All right.

"*Q.* Now, did you make this part of the answer; this partial answer to the question (*reading*):

" '*A.* Well, he examined her, then he called me and her mother in and said, "Oh, she's pregnant," said, "She's mighty young to be pregnant." '

"Do you remember making that answer to that question?

"*A.* Do I remember making that answer?

"*Q.* Yes.

"*A.* Reason I made that answer—

"*Q.* (*Interrupting*) Do you remember making that answer to that question?

"*A.* Yes, for one reason I made—

"*The Court:* Just a minute. Just answer the question. The question is: Did you make that answer to that question?

"*A.* I made it for one reason.

"*The Court:* Well, just answer the question. You made the answer, is that it?

"*A.* Yeah, for one reason.

"*The Court:* That is all you need to say.

"*Q.* (*By Mr. Kotelly, continuing*) If you did make that answer to that question, was that the truth?

"*A.* No, it wasn't.

"*Q.* It wasn't the truth?

"*A.* No.

"*Q.* Were you asked by the assistant prosecuting attorney if you would tell the truth?

"*Mr. Gillis:* I think we have here, again, apparently impeachment of his witness.

"*Mr. Kotelly:* I have a right under the statute, of course, to impeach a *res gestae* witness.

"*Mr. Gillis:* I don't think we have a *res gestae* witness.

"*Mr. Kotelly:* Yes.

"*The Court:* Have you any doubt, Mr. Gillis, about the law on the subject of a prosecutor impeaching a witness?

"*Mr. Gillis:* No, he can impeach his witness, but he has produced him and asked him to tell the truth, and he vouches for his reputation and veracity. Now he is trying to make him out that he is not all that he is brought forth.

"*The Court:* Well, suppose he is doing that. Isn't that what we call impeachment?

"*Mr. Gillis:* It is.

"*The Court:* Doesn't he have a right to do it if he feels that the questions that are asked now received different answers from the questions, rather, answers received before?

"*Mr. Gillis:* No. Before he was not under oath. We have him now under oath and I think there is quite a difference there.

"*The Court:* Do you mean to say that unless a man is under oath he can't be impeached?

"*Mr. Gillis:* He can be impeached about a different statement.

"*The Court:* That is what Mr. Kotelly is doing. It isn't necessary for a man to be under oath when he makes one statement before he can be impeached.

"Well, go ahead, Mr. Kotelly.

"*Q.* (*By Mr. Kotelly, continuing*) You say it wasn't the truth?

"*A.* No, it wasn't.

"*Q.* Why did you tell that to the assistant prosecuting attorney?

"*A.* Because he was holding her auntie and her mother.

"*Q.* Well, now, was this other part of the answer made in this fashion (*reading*):

" 'I said, "Yes, she is," and I said, "I'm sorry that she's like that, because we wanted her to finish school." '

"Do you remember answering that question in that fashion?

"*A.* Not in that fashion.

"*Q.* Well, let me ask you this. Do you know of your own knowledge as to whether or not Shirley was pregnant?

"*A.* No, I don't.

"*Q.* Do you know the reason why Shirley was taken to Dr. Knox?

"*A.* All I know before then she had had a boil or something.

"*Q.* She had a boil or something?

"*A.* Yeah.  *  *  *

"*Q.* Well, you remember answering that same question in the following form, reading from the same answer to that former question (*reading*):

" '*A.* So he said did we have any money, I told him, "No—I didn't have no money." So he said, "Well, if you had some money, I could help you all out."

" 'So I asked him, I said, "What kind of money?" He said, "$350" I said, "I haven't got $3.50." '

"Do you remember making that answer to that question?

"*A.* I told him I didn't have $3.

"*Q.* Do you remember making that answer to that question?

"*A.* Yeah, I remember making that answer that I didn't have the money.

"*Q.* You mean you only remember making the answer to the portion which says, 'I don't have $3.50.'?

"*A.* Three dollars fifty cents, no.

"*Q.* But did you make the statement to assistant prosecuting attorney that Dr. Knox asked $350 for treating Shirley?

"*A.* Maybe I did say $350 then.

"*Q.* Well, if you did, was that the truth?

"*A.* No, it wasn't. I didn't pay him no $350.

"*Q.* Well, if you made that answer to the assistant prosecuting attorney was that the truth?

"*A.* No. * * *

"*Q.* Well, now, I will ask you if this question was asked you in the prosecuting attorney's office and you made this statement (*reading*):

" '*Q.* How much did you give him?

" '*A.* Three hundred twenty-five dollars.'

"Did you make that answer to that question?

"*A.* Yeah, I made that answer.

"*Q.* Was that the truth?

"*A.* No, because the detectives told me I had paid him that, before I went to the prosecuting attorney's office.

"*Q.* They told you that?

"*A.* Yeah.

"*Q.* Is that the reason why you told the assistant prosecuting attorney that you had paid Dr. Knox $325?

"*A.* That is right. * * *

"*Q.* Well, now let me show you the statement that you made in the prosecuting attorney's office on the 2d day of September, 1959, and ask you as to whether

this question was asked you and you made this answer (*reading*):

" '*Q.* Now when you gave him the $325, what were you paying him for?
" '*A.* Well, I imagine I was paying him for, for him to give her the shots; whatever he is supposed to do to keep her from having a baby.'

"Did you make that answer to that question?
"*A.* (No response.)
"*Q.* Did you make that answer to that question?
"*A.* Yes, for one reason I made it."

It is claimed the questions were asked the girl for the purpose of refreshing her recollection. The error complained of is not that the prosecution did not have the right to refresh the memory of the girl but rather that the method pursued in asking the questions was not proper. It is interesting to note that the same assistant prosecutor followed an identical method of examination in the instant case as he pursued in the case of *People* v. *Thomas,* 359 Mich 251.

In the case of *People* v. *Palmer,* 105 Mich 568, this Court affirmed the proposition that a witness may have her memory refreshed by calling attention to prior statements where an occasion was afforded to do so (to refresh the witness's memory). By occasion it must be understood that a proper foundation has been laid. In the instant case a proper foundation requires the previous exposure of the prior statement to the witness so that she might read the entire statement to refresh her recollection of the questions she had been asked and her replies. In the event she then insisted she could not remember making the statement, or denied she had made it, a proper foundation would have been presented to make use of the statement. The method of questions and answers pursued appears to have been solely to get before the jury testimony that the witness—by her statement that this was all the doctor had told her—was not going to produce.

*People* v. *Thomas, supra,* would thus appear to stand for little if it does not mean that counsel must properly produce prior statements before a witness' memory may be refreshed. That case holds a proper foundation should be laid and proper methods followed in order to use prior statements to refresh the witness' memory.

In the case of *Higdon* v. *Kelley,* 339 Mich 209, the Court held a witness may be interrogated on direct examination by the party calling him as to inconsistent statements previously made by him for the purpose of refreshing his recollection and inducing him to correct his testimony, where the witness surprises the party calling him.

The practice used in the instant case is identical with the one which was criticized by Justice TALBOT SMITH writing for the Court in *People* v. *Thomas, supra,* where he quoted from the syllabus of an opinion of Justice COOLEY, speaking for the Court, in *Bashford* v. *People,* 24 Mich 244, as follows (p 263):

" 'It is error to permit the prosecution on a criminal trial, against the objection of the prisoner, under pretense of refreshing the recollection of a witness, but where there is no occasion for doing anything by way of refreshing his recollection, to read to him while on the stand, and in presence of the jury, his evidence given on a previous occasion, and then ask him whether, after having heard it read, he recollected certain facts stated in it.' "

Justice SMITH then said:

"The ancient ruling turned upon a consideration no less controlling today than it was almost a hundred years ago, namely, that the procedure employed 'was eminently unfair to the prisoner.' "

In the *Bashford Case, supra,* Justice COOLEY stated (pp 247, 248):

"It appears that while a witness was on the stand being examined in chief, and without the slightest occasion, so far as is shown by the record, for doing anything by way of refreshing his recollection, the following proceedings took place. The counsel for the prosecution, presenting the witness a paper, said: 'This is your deposition given on the examination?' The answer was, 'Yes, sir.' The counsel then said, 'If the court please, I propose to read part of his deposition, by way of refreshing his recollection.' To this the judge presiding at the trial replied, 'That is perfectly proper;' and against the objection of the prisoner, the counsel then publicly read a portion of the paper in the presence of the witness, the court and the jury, and then asked the witness whether, after having heard that read, he recollected certain facts mentioned in the question.

"We think the circuit judge erred in holding this to be entirely proper. It was, on the other hand, quite out of the ordinary course, and was eminently unfair to the prisoner. The usual course requires the witness, when he does not profess or appear to have forgotten the circumstances, to give his testimony in response to questions which simply call his attention to the points he is to speak to; and by that course while one party calls out the facts, the other is enabled to test both the recollection and the truthfulness of the witness by the best methods the law can provide. Unless the facts occurring on the trial were different from what appear from the record, we know of no authority which would sanction the course taken, and the reasons appear to us to be all against it. If the practice were admissible, the rule against leading questions would not be of the least importance; for in this way it would be easy to put into the mouth of the witness the very words it was desired he should repeat; and where he had been sworn before, all possible discrepancies would be avoided.

"For the reasons given, the conviction must be set aside, and a new trial awarded."

If we were to permit the practice of eliciting testimony in this manner to continue, the door would be open to all kinds of evils by which it would be impossible for a defendant to obtain a fair trial. If the questioning by the assistant prosecutor was an attempt to impeach the testimony of the witness, Richard Warren, then the rule originally established in *Lightfoot* v. *People,* 16 Mich 507, would be controlling,* where the origin of and reason for the rule are exhaustively discussed by Justice CAMPBELL, and as set forth in Tiffany's Criminal Law (5th How ed), p 618:

"But a witness cannot be cross-examined as to his statements made in any written deposition, letter or other paper, made or signed by him, until after the same has been produced and read to him. The writing is the best evidence of the statements contained in it. Verbal admissions or statements are only receivable of facts provable by parol; and until a paper is read it cannot be made the basis of a cross-examination at all."

In *People* v. *McArron,* 121 Mich 1, the Court held that a witness on a criminal trial cannot be cross-examined, for the purpose of impeachment, as to his testimony in justice court upon the examination, without first reading to him his deposition as returned.

No proper approach to impeachment was followed in the instant case. An examination of the re-occurrence of this type of examination clearly shows an intent to try to get testimony in the record without producing the statement. If this were an attempt to refresh the recollection of the witness, it is an even more clumsy and extended prejudicial examination than that of which Justice SMITH was speaking in *People* v. *Thomas, supra.*

* This rule applies equally to a civil case. *Dunbar* v. *McGill,* 69 Mich 297, 305.

The examination of these 2 witnesses clearly established a situation where it was impossible for defendant to have a fair trial. Such violations, taken together, constitute reversible error.

The second claimed error has to do with the failure of the trial court to grant an adjournment to allow the defense sufficient time to produce a witness, Dr. Gordon Campbell, whose testimony was alleged to be necessary to the defense. Defense counsel informed the trial court that Dr. Campbell had been contacted and had agreed to testify voluntarily. However, due to the fact Dr. Campbell had had an emergency call the morning he was supposed to be in court to testify, defendant's counsel requested additional time to produce him. The trial court refused the request to allow continuation to the afternoon session to give defense counsel an opportunity to procure the presence of this witness on behalf of defendant. The judge indicated his refusal was based on the fact the witness had not been subpoenaed, that the trial had gone on for several days, and there had been adjournments and delays.

Without ruling on this alleged error, we merely comment we are in sympathy with speed in handling all cases, including criminal trials. However, we view with some alarm a trial court refusing a short adjournment to obtain the testimony of important professional defense witnesses. We are all cognizant of the difficulty in obtaining such witnesses and the natural reluctance to subpoena them if they have agreed to be present.

Since there must be a retrial of this matter, we are not ruling on the other claims of error.

The conviction and judgment should be reversed and the cause should be remanded for new trial.

Kelly and Black, JJ., concurred with Kavanagh, J.

CARR, J. ˙ Defendant herein was tried in the recorder's court of the city of Detroit on a charge of having violated the provisions of CL 1948, § 750.14 (Stat Ann § 28.204). Said section declares it to be a felony to administer medicine, drugs, or other substances, or to employ any instrument or other means whatever, with intent to procure the miscarriage of a pregnant woman unless necessary to preserve her life. The information filed against defendant by the prosecuting attorney of Wayne county averred, substantially in the language of the statute, an attempt to commit a criminal abortion. It was the claim of the people that said offense was committed on the person of a pregnant unmarried girl 16 years of age at the time.

On the trial testimony was offered by the prosecution for the purpose of showing the condition of pregnancy, successive visits to the office of the defendant, the use of certain instruments by him to produce a miscarriage, the final result thereof, and the payment of money to defendant for his services. Defendant denied that the girl in question was pregnant when brought to him by her mother, admitted making an examination of her person, and asserted that he administered treatment and prescribed medicine for a condition that he discovered other than pregnancy. The jury returned a verdict of guilty as charged. A motion for a new trial was denied and sentence was imposed.

On this appeal it is the claim of the defendant that prejudicial error occurred during the course of the trial, requiring a setting aside of the sentence and a reversal of the conviction. The girl on whom the people claimed the criminal operation had been performed was called as a witness for the prosecution and gave testimony indicating that the offense charged in the information had been committed by defendant at the latter's office in the county of Wayne

on the 7th of August, 1959. She was interrogated by the assistant prosecuting attorney in charge of the people's case with reference to a conversation between herself and defendant following, as it is claimed, the induced miscarriage. She stated in substance that defendant had said that "it was all over." The witness further indicated that she did not remember that defendant made any further statement. For the purpose of refreshing her recollection the assistant prosecutor called the attention of the witness to the fact that on the 2d day of September, 1959, she had made a statement in the office of the prosecuting attorney, and was permitted to read to the witness a question from said statement, said question being:

"*Q.* What did he tell you?"

The witness stated that she remembered the question, but did not recall exactly what she said in reply thereto. Thereupon the assistant prosecutor, over the objection of counsel for defendant, read the answer, which related to the disposition by defendant of the fetus. With her recollection thus refreshed the witness then testified that the question was asked, that she had made the answer as read to her, and, further, that it was true. It does not appear that any further inquiry was made with reference to the prior statement in question.

On behalf of appellant it is insisted that permitting counsel to refresh the recollection of the witness in the manner indicated was prejudicial error, and that the assistant prosecutor should either have shown the statement to the witness, calling her attention to the particular question and answer involved, or have asked that the jury be excused to permit the question and answer previously given to be read to the witness. Reliance is placed on the decision in *People* v. *Thomas,* 359 Mich 251. Reference to that case, how-

ever, indicates that involved there was a situation wholly different from that presented by the record now before us. Counsel for the people in *People* v. *Thomas* was permitted to read to a witness, ostensibly for the purpose of refreshing her recollection, a series of questions and answers from a prior statement that it was alleged the witness had made concerning the facts in the case. Said witness professed inability to recall the questions and answers, and indicated that if such answers were made they were 'not true. The procedure followed actually resulted in placing before the jury the material parts of the prior statement by the witness, which was highly prejudicial to the defendant in the case but obviously did not result, as her testimony on the trial established, in refreshing her recollection. This Court held that the procedure followed was open to objection in view of the responses of the witness as to the prior statement and the disparity between it and her testimony on the trial. The opinion of the Court (pp 262, 263) pointed out the proper method to be followed under such circumstances in order to obviate possible error that might otherwise occur.

In the case at bar we have a situation radically different from that in *People* v. *Thomas*. Here a single question and answer was read to the witness, admittedly for the purpose of refreshing her recollection, and it is quite obvious that it did so. The witness remembered the question, remembered her answer to it, and stated that said answer was true. Had the jury been excused to permit inquiry of the witness with reference to her prior statement, or if the statement itself had been shown to her that she might examine the question and answer involved, it may not be assumed that she would have responded to the inquiries other than as she did before the jury. We are not concerned with the situation that would be presented had the witness failed to recall

the question or the answer that she made in her statement, or if she had testified that such answer was not correct. The procedure suggested in the unanimous opinion of this Court in *People* v. *Thomas* may well be followed to obviate the possibility of error, but under the facts in the present case we are not impressed that prejudicial error occurred.

The right of counsel in the trial of a case, whether civil or criminal, to refresh the recollection of a witness by calling attention to prior statements or testimony, where the necessity for such action is reasonably apparent, is well established. In *People* v. *Palmer,* 105 Mich 568, the permissible practice was referred to in the following excerpt from the opinion (p 571):

"A witness by the name of Adette was also a witness for the people on the former trial. Upon the redirect examination of the witness, counsel for the people, for the sole purpose of refreshing the witness' recollection, called his attention to his testimony upon the former trial. This was permitted under objection and exception, and is now alleged as error. This practice is too thoroughly established to now be doubted. *Beaubien* v. *Cicotte,* 12 Mich 459; *McCreery* v. *Green,* 38 Mich 172, 186, and authorities there cited; *Battishill* v. *Humphreys,* 64 Mich 514, 518. Respondent's counsel rely on *Bashford* v. *People,* 24 Mich 244, 247. That opinion, we think, recognizes the rule, but was based upon the fact that no occasion was shown for refreshing the witness' memory. In this case there was."

In *People* v. *Nankervis,* 330 Mich 17, the defendant was tried under an information charging the acceptance of bribes in connection with the performance of his official duties. The record in the case disclosed that the recollection of certain witnesses was sought to be refreshed by reading to them questions and answers previously contained in written statements

to the prosecuting attorney. In other words the same course was followed as in the trial of the defendant in the instant case, except that said witnesses were each interrogated with reference to a number of questions and answers rather than a single question and answer. It further appears that the memories of said witnesses were thereby refreshed. Commenting on the claim of error, it was said (pp 20, 21):

"The people called as witnesses persons connected with the transactions which resulted in defendant receiving bribes. Upon being examined, they proved to be very unwilling, reluctant, and forgetful witnesses, professing not to know or remember things which they readily remembered as soon as they were confronted with questions and answers made by them in written statements given by them to the prosecuting attorney some time before trial. Such use of written statements, to refresh memories of reluctant witnesses for the people, does not amount to their impeachment, as defendant claims, and is permissible practice. *People* v. *O'Neill*, 107 Mich 556; *People* v. *Prevost*, 219 Mich 233; *People* v. *Hallas*, 257 Mich 127."

See, also, *Higdon* v. *Kelley*, 339 Mich 209, and prior decisions there cited. Appellant's claim that the method of refreshing the memory of the witness in the case at bar constituted prejudicial error is not well-founded in view of the factual situation involved.

The trial of this case was commenced on Tuesday, November 24, 1959, and proceeded during the remainder of the court days of the week. Following the examination of witnesses produced on behalf of defendant the cause was adjourned Friday afternoon, prior to the usual hour for adjournment of court, until Monday, November 30th. Apparently this was done at the request of counsel for defendant who stated that he wished to subpoena certain doctors as expert witnesses. On Monday, November

30th, the taking of testimony continued and also on Tuesday until approximately 10:30 a.m., when counsel for defendant indicated that he had 2 expert witnesses, 1 from Receiving Hospital and the other from Wayne University who had not appeared in court. A recess was granted to make a telephone call, and continued until approximately 11:30 but neither witness appeared. It appears from the transcript of the testimony in the case that counsel for defendant informed the court that he was unable to contact the expert witness from Wayne Medical School and that he was informed by the doctor's secretary that the doctor did not know when he could appear in court. It further developed from a colloquy between court and counsel that no subpoena had been served on either of said desired expert witnesses, that counsel had not talked with the witness from Wayne University except over the telephone, and that the proposed witness had expressed an opinion which counsel felt would be "favorable to the defense." The court was asked to further adjourn the taking of testimony. Thereupon the trial judge, in denying the request, said in part:

"Now, last Friday when it looked as if we might see the completion of the people's case you asked me if I would adjourn until Monday so that you would have an opportunity to subpoena the doctors that you wanted. You had that opportunity and now I can't see why we should waste any more time. If you wanted to subpoena this doctor you had an opportunity to do it. You didn't do it, and he hasn't appeared as you say he told you he would, and I don't believe that we should delay this case any longer."

It is now claimed that the denial of the court to grant such further time as might have been required for producing the defendant's expert in court was error, and that a new trial should be granted for that

reason. We are not in accord with such claim. It does not appear that any attempt was made to serve a subpoena on the witness whom counsel indicated he wished to examine. No information was given to the court, so far as the record discloses, as to the nature of the testimony that the expert might give when and if he appeared in court. No attempt was made to make the showing contemplated by Michigan Court Rule No 36 (1945) as the basis for a motion for a continuance. See, also, *People* v. *Anderson,* 53 Mich 60; *Kome* v. *Kome,* 335 Mich 282, 285. Neither was there any assurance as to when the witness would be brought into court to testify, or would voluntarily appear for that purpose. The record does not disclose that counsel indicated to the court any intention to serve a subpoena.

It has been repeatedly recognized by this Court that a trial judge has discretion in granting or refusing a motion of the character here involved, and that this Court will not interfere unless there has been a palpable abuse of such discretion. In view of the situation with which the trial judge was confronted, it may not be said that his action in denying the request for further time for the appearance of the desired witness was unreasonable. The judicial discretion was not abused.

The claim is also made that the verdict of guilty was not justified under the evidence in the case. The testimony of the witnesses for the people was evidently accepted by the members of the jury as establishing the material facts. Defendant denied any criminal conduct on his part, but it was within the province of the jury to accept the proofs introduced by the prosecution. Such proofs, if believed, justified the verdict returned.

In a colloquy between court and counsel relating to the status of the record the trial judge, apparently

by way of answer to argument advanced by counsel
for defendant, made the statement that:

"We have had testimony of 1 witness, that is the
one directly involved in it, that such an operation was
performed. Now, with that before us I think we can
proceed perhaps a little more expeditiously."

It is now claimed that the reference to the testimony
of the girl on whom the prosecution claimed the
operation had been performed was prejudicial to
defendant. Obviously, however, the reference was
to testimony that the members of the jury had heard,
and it may be assumed that they had in mind at the
time to what facts, or claims, the witness had testi-
fied. The remark was merely a casual one in the
course of the colloquy, and it does not appear that
it could by any possibility have prejudiced the de-
fense.

Attention is also called to the fact that a character
witness for defendant, who was sworn and examined
prior to defendant's taking the stand as a witness
in his own behalf, was asked to testify as to the
reputation of defendant for "truth and veracity."
Objection to the question was sustained. Obviously
when offered the testimony was incompetent. The
trial judge had no way of knowing whether defend-
ant would testify or would exercise his privilege of
not doing so. After defendant was examined the
witness was not recalled for the purpose of giving
testimony as to reputation for truth and veracity.
The ruling, of which complaint is now made, was
correct. People v. Lewis, 305 Mich 75.

Error is also assigned on the refusal of the court
to give 3 certain requests to charge in the form in
which they were submitted. The trial judge in-
dicated in his opinion denying the motion for a new
trial that the requests were not given because there
was an absence of testimony to support them. Our

examination of the record compels us to agree with such conclusion. The requests in the form in which they were submitted might well have opened the door to speculation on the part of the members of the jury with a complete absence of proof on which to base any conclusion. The case was submitted to the jury in a charge that fully and carefully protected the rights of the defendant. We find no basis for a claim of error with reference to the denial of defendant's requests.

On cross examination of the girl on whom the illegal operation was claimed by the people to have been performed with reference to treatment given her by a physician, other than the defendant, prior to the occurrence on which the present case was based, a number of questions were asked and answered indicating that such treatment was for a boil with which the witness had been afflicted. The questions asked related to the exact dates on which she had seen the doctor so treating her and the specific treatment given. Objection was made on the ground of lack of materiality. The objection was sustained and properly so. The record here discloses no possible connection between the matters concerning which counsel sought to cross examine the witness and the issues involved in the trial of the defendant.

Further complaint is made on behalf of appellant that the assistant prosecuting attorney was improperly permitted to impeach the testimony of one of the people's witnesses. The substance of the claim appears to be that counsel for the people read to the witness certain questions and answers previously given by him in a statement, whereas proper procedure in such a case requires, it is asserted, that the statement be marked as an exhibit and verified by the stenographer who took it as to the correctness of the questions and answers therein. However, in the instant case the witness whose impeachment was

apparently sought admitted that the questions read were asked him, and admitted also the giving of the answers shown in the statement, undertaking in so doing to explain the variance between his testimony as a witness on the trial and his prior answers to the questions propounded to him in the prosecuting attorney's office. In view of the admission of the witness in such respect to the effect that he was previously asked the questions and gave the answers set forth in the statement used by the assistant prosecutor, we do not think that any error prejudicial to defendant resulted from the method followed. Such conclusion follows, whether the attempt was to impeach or to refresh the recollection of the witness.

We find no reversible error in the case, and the conviction and judgment are affirmed.

Dethmers, C. J., and Edwards and Souris, JJ., concurred with Carr, J.

Otis M. Smith, J., took no part in the decision of this case.