# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DERRICK DANIEL DAVIS,

        Defendant-Appellant.

UNPUBLISHED
May 17, 2018

No. 335155
Wayne Circuit Court
LC No. 16-004373-01-FC

Before: O'CONNELL, P.J., and HOEKSTRA and K. F. KELLY, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of assault with intent to do great bodily harm less than murder ("AWIGBH"), MCL 750.84, felon in possession of a firearm ("felon-in-possession"), MCL 750.224f, and possession of a firearm during the commission of a felony ("felony-firearm"), MCL 750.227b. The trial court sentenced defendant, as a second-offense habitual offender, MCL 769.10, to 10 to 15 years' imprisonment for AWIGBH, 60 to 90 months' imprisonment for felon-in-possession, and 2 years' imprisonment for felony-firearm. For the reasons explained in this opinion, we affirm.

This case arises from a shooting that occurred at an athletic center in Detroit on July 26, 2015. On that date, Jeremy Keahey, Staysic Keahey, and Eric Sanford played a game of pick-up basketball against another team, which included defendant. During the game, Staysic threw an arm and inadvertently scratched defendant, leading to a brief argument. However, the game continued and ultimately defendant's team lost. After the game, a physical fight broke out when defendant's team refused to vacate the court. In the brawl that followed, Staysic was punched and stomped into unconsciousness. Eric recalled hitting defendant during the fight, after which defendant said: "I'm about to kill this n***a." Eric saw defendant walk towards a car, and defendant returned with a gun that he fired at Eric. Eric jumped into his own car to drive away and defendant again shot at him. Jeremy saw defendant shooting at Eric's car, and Jeremy began to run toward a nearby playscape. As he ran, Jeremy looked back and saw defendant aiming the gun at him. Jeremy was shot in the back and is now paralyzed. After the shooting, police found a revolver at the scene.

Defendant fled the athletic center, but he was arrested shortly after the shooting as he was walking nearby. Defendant matched the description of the shooter, he had a "busted lip," and he told the arresting officer that he had been struck during a fight over a basketball game.

Defendant also indicated that there had been a shooting, but he told the officer that he "didn't do this." Defendant was released while the investigation was ongoing and he fled to West Virginia, where he was eventually apprehended in March 2016. Both Eric and Jeremy identified defendant as the shooter in a photographic line-up and at trial. Staysic confirmed defendant's participation in the basketball game and the fight, but because he was on the ground and unconscious, Staysic did not see the shooting. The jury convicted defendant as noted above. Defendant now appeals as of right.

## I. REQUEST FOR A CONTINUANCE

On appeal, defendant contends that the trial court abused its discretion by denying his request for a continuance on the last day of trial to secure the testimony of a newly discovered witness, Kenneth Williams. Alternatively, defendant argues that defense counsel was ineffective by failing to properly investigate and subpoena Williams before trial. We disagree.

"A trial court's decision whether to grant a continuance is reviewed for an abuse of discretion." *People v Jackson*, 467 Mich 272, 276; 650 NW2d 665 (2002), citing MCR 2.503(D)(1). "An abuse of discretion occurs when the trial court's decision is outside the range of principled outcomes." *People v Daniels*, 311 Mich App 257, 265; 874 NW2d 732 (2015).

Under MCR 2.503(B)(1), a motion for a continuance must be based on good cause. *Jackson*, 467 Mich at 276. See also MCL 768.2. A request for a continuance based on the absence of a witness is governed by MCR 2.503(C), which, in relevant part, states:

(C) Absence of Witness or Evidence.

(1) A motion to adjourn a proceeding because of the unavailability of a witness or evidence must be made as soon as possible after ascertaining the facts.

(2) An adjournment may be granted on the ground of unavailability of a witness or evidence only if the court finds that the evidence is material and that diligent efforts have been made to produce the witness or evidence.

Consequently, to invoke the trial court's discretion to grant a continuance based on the unavailability of a witness, "a defendant must show both good cause and diligence." *People v Coy*, 258 Mich App 1, 18; 669 NW2d 831 (2003). "Good cause factors include whether defendant (1) asserted a constitutional right, (2) had a legitimate reason for asserting the right, (3) had been negligent, and (4) had requested previous adjournments." *Id*. (quotation marks and citation omitted). "Even with good cause and due diligence, the trial court's denial of a request for an adjournment or continuance is not grounds for reversal unless the defendant demonstrates prejudice as a result of the abuse of discretion." *Id*. at 18-19.

In this case, at the beginning of the last day of trial, defense counsel asked for a continuance because Williams was not available to testify that day. Williams had not been endorsed as a witness by either side and he had not been subpoenaed. Instead, defense counsel informed the trial court on the last day of trial that Williams "magically" called her the night before on her personal cell phone at approximately 5:40 p.m. Defense counsel did not provide an affidavit from Williams regarding the proposed substance of his testimony. However,

according to defense counsel, Williams told her on the phone that he was involved in the basketball game and he was present for the shooting. More specifically, defense counsel stated that Williams told her that "he was standing close" to defendant "when the shots were fired and that he did not see [defendant] shooting a gun," rather, "the gunshots came from another direction" and defendant "wasn't the shooter."

Although Williams claimed to have been a witness to the shooting that occurred more than a year before trial, the prosecutor stated that she had no knowledge of him and that he was not mentioned in any of the documents relating to the case. Likewise, defense counsel had no idea why Williams had not come forward in the year since the shooting or even earlier during the trial. Defense counsel also could not say with certainty how Williams obtained her phone number; but, she believed it was given to him by defendant's family. Based on her conversation with Williams the night before, defense counsel requested a continuance on the last day of trial because Williams was not present in court to testify as "he could not get the time off from his job with such short notice." However, despite this request for a continuance, defense counsel acknowledged that she did not have Williams's address in order to subpoena him for trial, she did not indicate when or where she intended to serve him a subpoena without knowing his address, and she did not say when she expected that he would be available to testify.

The trial court denied defendant's request for a continuance. In doing so, the trial court "assum[ed]" that Williams was "legitimate" despite the fact that Williams made no effort to contact the police about the shooting. Nevertheless, given the sparsity of the available information, including the fact that defense counsel did not even know Williams's address and had no apparent means of serving him a subpoena, the trial court declined to grant a continuance. The trial court suggested that defense counsel's investigator or defendant's family members, who had apparently identified Williams as a potential witness, obtain more information, such as Williams's address, so that the trial court could "more properly address" the request for a continuance. Ultimately, the trial court ruled that "until I'm provided with far more information than I have now, any request for a continuance is denied." No additional information was provided to the trial court, and the jury returned its verdict later that day.

Considering the record before us, we conclude that the trial court did not abuse its discretion by denying defendant's request for a continuance because defendant failed to make a showing of due diligence. As the moving party in the trial court, defendant bore the burden of showing both good cause and diligence. *Coy*, 258 Mich App at 18. And, as the appellant, defendant bears the burden of furnishing this Court "with a record to verify the factual basis of any argument upon which reversal [might be] predicated." *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000). Yet, the lower court record does not provide a factual basis for concluding that Williams could not have been located in time for trial with the exercise of due diligence. According to defense counsel's statements, defendant participated in a basketball game with Williams on the day of the shooting and Williams eventually contacted defense counsel after receiving her phone number from defendant's family. But, too little information is set forth about how Williams was identified as a potential witness, how long defendant and/or his family had known about Williams's identity, whether defense counsel knew Williams's identity before his 11th-hour phone call during trial, and what efforts, if any, were made to locate Williams before trial. Without more information, it cannot be concluded that defendant exercised due diligence to procure Williams's testimony in a timely manner. Moreover, even

after Williams's last-minute phone call to defense counsel, he failed to appear at trial the following day and it was unclear when he would be available. Indeed, in seeking a continuance, defendant failed to provide the trial court with any indication of when and if Williams would voluntarily appear to testify or whether defense counsel intended to subpoena him and, if so, where Williams could be served with a subpoena, which further undermines the assertion that defendant exercised due diligence to procure Williams's testimony. See *People v Knox*, 364 Mich 620, 644; 111 NW2d 828 (1961); *People v Taylor*, 159 Mich App 468, 490; 406 NW2d 859 (1987). Absent a showing of due diligence, defendant was not entitled to invoke the trial court's discretion to grant a continuance based on Williams's unavailability. *Coy*, 258 Mich App at 18. Thus, the trial court's denial of a request for a continuance was not an abuse of discretion. Additionally, we note that, even assuming due diligence and good cause, defendant cannot show prejudice because there is nothing in the record—such as an affidavit from Williams—to confirm that he would have testified in accordance with the telephone call reported by defense counsel. Cf. *id*. at 19; *Daniels*, 311 Mich App at 267. Accordingly, defendant is not entitled to relief based on the trial court's denial of his motion for a continuance.[1]

Alternatively, defendant argues that, if the record does not establish the exercise of due diligence to obtain Williams's testimony, then defense counsel must have been ineffective by conducting a substandard investigation and failing to locate Williams, and subpoena him, before trial. This argument also lacks merit. To establish an ineffective assistance claim, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). A defendant also bears the burden of establishing the factual predicate of an ineffective assistance of counsel claim. *People v Solloway*, 316 Mich App 174, 189; 891 NW2d 255 (2016). "Trial counsel is presumed to have been effective, and defendant must prove otherwise." *People v Blevins*, 314 Mich App 339, 351; 886 NW2d 456 (2016). Because an evidentiary hearing has

---

[1] On appeal, defendant also argues that the trial court's denial of his motion for a continuance violated his constitutional right to present a defense. Defendant did not present this constitutional claim in the trial court, and thus our review is for plain error affecting defendant's substantial rights. *People v King*, 297 Mich App 465, 472-473; 824 NW2d 258 (2012). Under this standard, defendant is not entitled to relief. Although a defendant has a constitutional right to present a defense, this right is not absolute and "[a] defendant must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Daniels*, 311 Mich App at 265 (quotation marks and citation omitted). "MCR 2.503 is the established rule of procedure that governs adjournments, particularly to secure the testimony of a witness." *Id*. As discussed, because defendant failed to make a showing of due diligence, he was not entitled to a continuance, and thus the trial court's denial of his request did not violate his right to present a defense. See *id*. at 267. Moreover, because there is no record evidence of Williams's proposed testimony, defendant cannot show that the denial of the continuance to procure Williams's testimony affected the outcome of the proceedings. Defendant has not shown plain error.

not been held, our review is limited to mistakes apparent on the record. *People v Scott*, 275 Mich App 521, 526; 739 NW2d 702 (2007).

In this case, the record before us does not establish that defense counsel's pretrial investigation and failure to subpoena Williams for trial fell below an objective standard of reasonableness. As discussed, the record contains little information about Williams and what efforts, if any, were made to locate him prior to his phone call to defense counsel. Given the lack of information about counsel's investigation, we cannot conclude that any failure to locate Williams and subpoena him for trial is attributable to some failing by defense counsel (as opposed to some other theoretical cause such as, for example, negligence by defendant in failing to tell counsel about Williams), and thus defendant has failed to establish the factual predicate of his claim. See *Solloway*, 316 Mich App at 189. Moreover, even assuming that defense counsel performed unreasonably by failing to uncover Williams as a potential witness and subpoena him for trial, defendant's claim would nevertheless fail because he cannot show prejudice. Despite defendant's assertions that Williams could offer testimony suggesting that defendant was not the shooter, defendant never produced Williams or an affidavit from Williams, meaning that there is no record evidence of what testimony Williams would have offered if called as a witness.[2] Cf. *People v Tommolino*, 187 Mich App 14, 20; 466 NW2d 315 (1991). Absent evidence that Williams's testimony would have been favorable to the defense, defendant cannot show that he was prejudiced by counsel's failure to locate Williams and to procure his testimony, and thus his ineffective assistance claim must fail. See *Trakhtenberg*, 493 Mich at 51.

---

[2] On appeal, in an effort to establish prejudice, defendant emphasizes his trial attorney's representations about her telephone conversation with Williams. Defendant also moved this Court to remand for factual development related to his ineffective assistance claim based on the affidavit of his appellate attorney, who also apparently spoke to Williams via telephone. We previously denied defendant's motion for remand. *People v Davis*, unpublished order of the Court of Appeals, entered August 2, 2017 (Docket No. 335155). However, it is worth mentioning that defendant's attorneys have given inconsistent secondhand reports of Williams's alleged eyewitness account insofar as defendant's appellate attorney avers in her affidavit that Williams told her that he was not present for the actual shooting but instead left the scene when someone other than defendant said "something about going to get a gun." Given the assertion that Williams did not see the shooting, Williams's testimony could not have affected the outcome of trial, meaning that there was no need for a remand for factual development, MCR 7.211(1), and defendant cannot show he was denied the effective assistance of counsel based on the information in appellate counsel's affidavit. More generally, we note that defendant's efforts to establish prejudice based on his attorneys' reports of telephone conversations with Williams are unpersuasive. Although defendant's attorneys may have spoken to Williams, the fact remains that defendant has failed to produce Williams or an affidavit from Williams, and there remains no evidence that Williams would actually testify favorably on defendant's behalf. See *People v Lewis*, 305 Mich 75, 78; 8 NW2d 917 (1943) (finding attorney's affidavit was insufficient to establish "whether the witnesses referred to can or will testify to the claimed evidence"); see also *People v Tommolino*, 187 Mich App 14, 20; 466 NW2d 315 (1991).

## II. IDENTIFICATION TESTIMONY

Next, defendant argues that Eric's and Jeremy's identifications of defendant should have been suppressed because the pre-trial photographic lineup was impermissibly suggestive in light of the fact that defendant was the only participant in the array wearing a tank top. Alternatively, defendant asserts that defense counsel was ineffective for failing to move to suppress the photographic lineups as well as Eric's and Jeremy's in-court identifications of defendant. We disagree.

"A motion to suppress evidence must be made prior to trial or, within the trial court's discretion, at trial." *People v Gentner, Inc*, 262 Mich App 363, 368; 686 NW2d 752 (2004) (quotation marks and citation omitted). Defendant did not move to suppress the photographic lineup or Eric's and Jeremy's in-court identifications either before trial or during trial. Thus, this issue is unpreserved, and reviewed for plain error. See *King*, 297 Mich App at 472-473.

"An identification procedure that is unnecessarily suggestive and conducive to irreparable misidentification constitutes a denial of due process." *People v Williams*, 244 Mich App 533, 542; 624 NW2d 575 (2001). "The fairness of an identification procedure is evaluated in light of the total circumstances to determine whether the procedure was so impermissibly suggestive that it led to a substantial likelihood of misidentification." *People v Hornsby*, 251 Mich App 462, 466; 650 NW2d 700 (2002). "Generally, the photo spread is not suggestive as long as it contains some photographs that are fairly representative of the defendant's physical features and thus sufficient to reasonably test the identification." *People v Kurylczyk*, 443 Mich 289, 304; 505 NW2d 528 (1993) (quotation marks and citation omitted). Physical differences among the individuals in the array, or differences in the clothing worn by the participants, "do not necessarily render the procedure defective and are significant only to the extent that they are apparent to the witness and substantially distinguish the defendant from the other lineup participants" so as to create a substantial likelihood of misidentification. *Hornsby*, 251 Mich App at 466; *Kurylczyk*, 443 Mich at 304-305, 312. Instead, these types of differences "generally relate only to the weight of an identification and not to its admissibility." *Hornsby*, 251 Mich App at 466.

In this case, the photo array contained six color photographs, including a photograph of defendant. All six participants in the array are African-American males, all of the men are wearing their hair in "twists," and two of the men have visible tattoos on their chests. Viewing the photographs as a group, there is nothing about defendant's physical characteristics to significantly distinguish him from the other participants. Cf. *id*. at 467. Defendant's only complaint on appeal is that he is singled-out by his clothing because he is the only one wearing a white tank top, and defendant emphasizes that witnesses described the shooter as wearing a "beater" or tank top during the basketball game. However, although it is true that defendant is the only individual wearing a tank top, this difference in clothing did not substantially distinguish defendant from the other participants. All the men are dressed in relatively casual clothing that would be suitable for athletics, including t-shirts and sweatshirts that could easily be put on over a tank top, and three of the men are wearing some kind of white shirt. Notably, neither Eric nor Jeremy indicated that they selected defendant from the photo array based on his shirt; indeed, Jeremy, for example, specifically described covering up the men's hair and picking defendant based on his "face." Cf. *id*.; *Kurylczyk*, 443 Mich at 305, 313-314. Overall, nothing

about the photo array was so "impermissibly suggestive that it led to a substantial likelihood of misidentification." *Hornsby*, 251 Mich App at 466. Instead, these differences go to the weight, not the admissibility of the evidence. See *id*. Consequently, defendant was not entitled to the suppression of evidence relating to Eric's and Jeremy's pre-trial identifications.

With regard to Eric and Jeremy's in-court identifications of defendant, if evidence of a pre-trial identification is suppressed because of impermissibly suggestive identification procedures, an in-court identification may still be admissible provided that the witness has "an independent basis to identify the defendant in court." *People v Gray*, 457 Mich 107, 114-115 & n 9; 577 NW2d 92 (1998). However, in this case, we need not consider whether Eric and Jeremy had independent bases for their in-court identifications because, as discussed, the pre-trial identification procedures were not unduly suggestive and thus the witnesses' in-court identifications were not tainted by an unduly suggestive pre-trial procedure. See *People v Barclay*, 208 Mich App 670, 675; 528 NW2d 842 (1995). Finally, insofar as defendant claims that counsel provided ineffective assistance by failing to file a motion to suppress the pre-trial and in-court identifications of defendant, this claim is without merit because the identification evidence was admissible and counsel cannot be considered ineffective for failing to file a futile motion. *People v Fonville*, 291 Mich App 363, 384; 804 NW2d 878 (2011).

## III. SUFFICIENCY OF THE EVIDENCE

In his Standard 4 Brief, defendant argues that the prosecution presented insufficient evidence to support his convictions. Specifically, defendant challenges the credibility of the identification testimony and he emphasizes that there is no physical evidence—such as evidence of gunpowder on his person or his fingerprints on the gun—to establish his identity as the shooter. Based on the contention that there was insufficient evidence that he was the shooter, he asserts that there was insufficient evidence to support his convictions for AWIGBH, felon-in-possession, and felony-firearm. We disagree.

We review de novo a challenge to the sufficiency of the evidence. *People v Harrison*, 283 Mich App 374, 377; 768 NW2d 98 (2009). "We examine the evidence in a light most favorable to the prosecution, resolving all evidentiary conflicts in its favor, and determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond reasonable doubt." *People v Ericksen*, 288 Mich App 192, 196; 793 NW2d 120 (2010). "Circumstantial evidence and reasonable inferences arising therefrom may constitute proof of the elements of the crime." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). "This Court will not interfere with the trier of fact's determinations regarding the weight of the evidence or the credibility of witnesses." *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014).

"[I]t is well settled that identity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). "[P]ositive identification by witnesses may be sufficient to support a conviction of a crime." *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000). "The credibility of identification testimony is a question for the trier of fact that we do not resolve anew." *Id*.

As discussed, defendant participated in a basketball game against Eric, Staysic, and Jeremy. During a brawl that ensued after the game, Eric heard defendant make a verbal threat to kill. Defendant then retrieved a gun, and he fired that gun at Eric and Jeremy, hitting Jeremy in the back and paralyzing him. Defendant was arrested nearby and he acknowledged to the arresting officer that he had been involved with the fight after the basketball game. Notably, both Eric and Jeremy identified defendant as the shooter from a photo array and at trial. Although defendant contests the credibility of Eric's and Jeremy's identifications of him as the shooter, their credibility was for the jury. *Id.* Further, while defendant notes the lack of fingerprints on the gun and the lack of evidence regarding gunpowder residue on his person, eyewitness identification testimony was sufficient to establish his identity as the shooter. *Id.* Given the evidence that defendant possessed and used a gun to shoot at Eric and Jeremy, there was clearly sufficient evidence to establish defendant's identity as the shooter and to support defendant's convictions for AWIGBH, felon-in-possession, and felony-firearm.

## IV. GREAT WEIGHT OF THE EVIDENCE

Finally, in his Standard 4 Brief, defendant argues that the jury's verdict was against the great weight of the evidence. Defendant again challenges the credibility of Eric's and Jeremy's identification testimony, asserting that their testimony was inherently implausible. We disagree.

Defendant's argument is unpreserved because he failed to move the trial court for a new trial, and thus our review is for plain error affecting defendant's substantial rights. *People v Musser*, 259 Mich App 215, 218; 673 NW2d 800 (2003). "The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *Id.* at 218-219. "[A]bsent exceptional circumstances, issues of witness credibility are for the jury," *People v Lemmon*, 456 Mich 625, 642; 576 NW2d 129 (1998), and "[c]onflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial," *id.* at 647.

In this case, the evidence does not preponderate so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. To the contrary, as we have discussed, there is strong evidence that defendant shot at Eric and Jeremy during a fight following a basketball game. While defendant challenges the credibility of Eric's and Jeremy's identification testimony, this testimony did not contradict indisputable physical facts or law and there is simply no merit to the contention that their identification testimony was patently incredible or so inherently implausible that it could not be believed. See *id.* In these circumstances, judicial intervention is not permitted, and we will not interfere with the jury's role in assessing credibility and the weight of the evidence. *People v Bosca*, 310 Mich App 1, 15; 871 NW2d 307 (2015). Defendant's great weight of the evidence argument is without merit.

Affirmed.

/s/ Peter D. O'Connell
/s/ Joel P. Hoekstra
/s/ Kirsten Frank Kelly